**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY ) | |
| AND ETHICS IN WASHINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.:  1:13-cv-1291 (EGS) |
| ) | |
| U.S. DEPARTMENT OF JUSTICE *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................2

I.   Relevant Statutory Framework. ....................................................................................2

II.  Factual and Procedural History. ...................................................................................3

STANDARD OF REVIEW ..................................................................................................6

ARGUMENT ........................................................................................................................7

I.   CREW Lacks Standing to Challenge OLC's Alleged Refusal to Make Its Binding
     Opinions Public..........................................................................................................7

II.  Judicial Review of CREW's APA Lawsuit is Precluded, Because FOIA Itself Provides
     an Adequate, Alternative Remedy. ...........................................................................10

     A.  The APA Does Not Permit Review of CREW's Claim Here. ...........................10

     B.  CREW's Present Lawsuit Cannot Be Construed as a FOIA Lawsuit. ..............13

III. Even If APA Review Were Available, CREW Fails to Challenge Any Final Agency
     Action........................................................................................................................16

IV.  CREW's APA Claim Would Also Fail On the Merits, Because FOIA Does Not
     Require OLC to Publish All of Its "Binding" Legal Opinions. ...............................18

     A.  CREW's Complaint is Ambiguous as to What Constitutes a "Binding" OLC
         Opinion. .........................................................................................................19

     B.  OLC's Alleged Policy Cannot Be Considered Arbitrary and Capricious. .......23

         1.  OLC's Opinions Are Neither Final Opinions Made in the Adjudication of
             Cases, Nor Statements of Policy Adopted by the Agency. .........................24

         2.  OLC's Opinions Are Generally Exempt From Disclosure Pursuant to Both the
             Attorney-Client Privilege and the Deliberative Process Privilege...............26

     C.  OLC Does Not Create Secret Law, Nor Should Its Role Within the Executive
         Branch Diminish Its Ability to Invoke Applicable Privileges. .......................31

     D.  CREW's Argument Raises Significant Constitutional Concerns About the
         Executive Branch's Ability to Obtain Confidential Legal Advice....................35

CONCLUSION....................................................................................................................38

## INTRODUCTION

This lawsuit is premised on the extraordinary argument that the Department of Justice's Office of Legal Counsel (OLC) must automatically publish a large but ill-defined portion of its legal advice, even though courts have repeatedly held that much of the legal advice OLC provides is protected from disclosure by applicable privileges.  According to the plaintiff, Citizens for Responsibility and Ethics in Washington (CREW), such publication is required by the affirmative disclosure provisions of the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(2).  OLC's alleged failure to comply with those provisions—*i.e.*, OLC's alleged "refusal to make public all binding legal opinions issued by OLC"—is, CREW contends, arbitrary and capricious under the Administrative Procedure Act (APA).  Compl. (ECF No. 1) ¶ 41.

This argument is remarkable.  For one thing, CREW's argument cannot be reconciled with the overwhelming weight of judicial authority, which holds that many OLC opinions are properly withheld pursuant to FOIA's statutory provision permitting the withholding of information based on the government's deliberative process and attorney-client privileges.  Moreover, CREW's argument is so expansive that accepting it would threaten the Executive Branch's ability to receive legal advice in confidence, thereby interfering with the President's duty to "take Care that the Laws be faithfully executed[.]"  U.S. Const., art. II, § 3.  The Freedom of Information Act does not require such a result, nor should it be construed to permit as much.  In fact, the D.C. Circuit has consistently interpreted FOIA to protect confidential legal advice.  Thus, CREW's sole claim here—that it is arbitrary and capricious for OLC not to publish all of its "binding" legal opinions—is wholly without merit.

Moreover, the Court need not even consider the merits of CREW's claim here, because there are three threshold barriers to judicial review.  First, CREW lacks standing to pursue its claim.  CREW's Complaint fails to challenge any tangible policy within OLC, and in any event,

CREW's Complaint fails to demonstrate a likelihood that CREW will be subject to OLC's purported policy in the future.  Second, judicial review of CREW's APA claim is precluded, because the ultimate relief sought by the claim—disclosure of records—is available through FOIA itself.  Thus, FOIA provides an adequate, alternate remedy that precludes CREW's APA claim, which is the sole claim alleged in the Complaint.  And third, even assuming the validity of an APA claim here, CREW fails to challenge any final agency action by OLC.  CREW does not seek to challenge the withholding of any specific OLC opinions, but instead challenges OLC's alleged policies in the abstract, seeking to obtain overarching judicial review of OLC's overall compliance with FOIA.  This type of broad, abstract claim is not cognizable under the APA, which limits judicial review to challenges to discrete, final agency actions.

Thus, there are three threshold barriers to judicial review, and in any event the single claim articulated in CREW's Complaint is meritless.  OLC opinions are not the type of documents falling within FOIA's affirmative disclosure provisions, and are also generally exempt from disclosure under FOIA pursuant to (at least) the deliberative process and attorney-client privileges.  CREW's Complaint should therefore be dismissed for lack of subject-matter jurisdiction, or in the alternative for failure to state a claim upon which relief can be granted.

## BACKGROUND

## I.     RELEVANT STATUTORY FRAMEWORK.

Pursuant to the Freedom of Information Act, government agencies are required to affirmatively publish certain categories of records.  *See* 5 U.S.C. § 552(a)(1), (2).  As relevant here, the affirmative disclosure provisions of FOIA require that:

> Each agency . . . shall make available for public inspection and copying . . . (A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases; [and] (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register[.]

*Id.* § 552(a)(2).

For records that have not been affirmatively disclosed, FOIA permits individuals to submit requests to agencies for the disclosure of specific records:

> Except with respect to the records made available under paragraphs (1) and (2) of this subsection . . . each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

*Id.* § 552(a)(3)(A).

Not all types of records, however, need to be disclosed under FOIA. The Act contains nine specific exemptions, which allow the agency to withhold the information falling within such exemptions. *See id.* § 552(b). In light of the language of § 552(b)—"[t]his section does not apply to matters that [fall within an exemption]"—agencies may withhold such exempt information regardless of whether the record falls within the affirmative-disclosure provisions of § 552(a)(2), or was requested by an individual under § 552(a)(3). *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 160 (1975) (holding that the attorney work-product privilege applied, and thus the document was exempt regardless of whether it fell within a § 552(a)(2) category).

Here, the most relevant exemption is § 552(b)(5), which protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" This exemption includes the privileges traditionally available to the government in civil discovery, such as the deliberative process, attorney-client, and attorney work-product privileges. *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799-801 (1984).

## II.    FACTUAL AND PROCEDURAL HISTORY.

The plaintiff here, CREW, is "a non-profit, non-partisan corporation" that "disseminate[s] information to the public about government officials and their actions." Compl. ¶¶ 4, 5. CREW

advances its mission by using "government records made available to it under the FOIA as well as government records agencies have otherwise made available for inspection and copying." *Id.* ¶ 5.

In the present lawsuit, CREW seeks access to records within the Office of Legal Counsel, which is a component of the United States Department of Justice. OLC's responsibilities include "[p]reparing the formal opinions of the Attorney General; rendering informal opinions and legal advice to the various agencies of the Government; and assisting the Attorney General in the performance of his functions as legal adviser to the President and as a member of, and legal adviser to, the Cabinet." 28 C.F.R. § 0.25(a); Compl. ¶ 18. These functions are vested in the Attorney General by statute, 28 U.S.C. §§ 511-513, and since the 1950s have been delegated to OLC to perform. Compl. ¶¶ 15, 17. These advice-giving functions are longstanding in nature: since 1789 the Attorney General has been statutorily charged with providing his "advice and opinion upon questions of law" to the President and to the heads of other agencies. *See* Compl. ¶ 13 (quoting the Judiciary Act of 1789).

On July 3, 2013, CREW sent a letter to the head of OLC, Assistant Attorney General Virginia A. Seitz, requesting that OLC "immediately comply with its obligation under 5 U.S.C. § 552(a)(2) to make available for public inspection and copying all OLC opinions that are binding on the executive branch." Compl. ¶ 32; *see also* Letter from Weismann to Seitz (attached hereto as Exh. 1) at 2. More specifically, CREW argued that "OLC opinions . . . function as binding law on the executive branch" and "[a]s a result, they constitute either 'final opinions . . . made in the adjudication of cases,' or 'statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register.'" Exh. 1 at 3 (quoting 5 U.S.C. § 552(a)(2)(A), (B)). CREW's letter closed by stating that "OLC should

immediately begin the process of disclosing all of its opinions, beginning with those issued in the last 20 years, which are likely to be of greatest public interest." *Id.*

OLC responded to CREW's letter on August 20, 2013.  *See* Compl. ¶ 33; Letter from Bies to Weismann (attached hereto as Exh. 2).  The letter was from John E. Bies, a Deputy Assistant Attorney General within OLC, and explained that "OLC provides confidential legal advice within the Executive Branch" and "[a]s such, OLC's advice is ordinarily covered by the attorney-client and deliberative process privileges, and is therefore exempt from mandatory disclosure under the FOIA[.]"  Exh. 2 at 1 (citing 5 U.S.C. § 552(b)(5)).  Additionally, the Bies letter stated that "as confidential and pre-decisional legal advice, our opinions generally constitute neither 'final opinions . . . made in the adjudication of cases' nor 'statements of policy and interpretations which have been adopted by the agency.'"  *Id.*

OLC's letter then went on to explain that, notwithstanding the fact that OLC opinions are generally exempt from FOIA, OLC nonetheless "make[s] an individualized, case-by-case determination with respect to whether each opinion of our Office is appropriate for publication." *Id.* (citing Memorandum for Attorneys of the Office, from David J. Barron, Acting Assistant Att'y Gen., Office of Legal Counsel, Re: Best Practices for OLC Legal Advice and Written Opinions 5-6 (July 16, 2010) (hereafter "Best Practices Memo"), *available at* http://www.justice.gov/olc/pdf/olc-legal-advice-opinions.pdf (attached hereto as Exhibit 3)).  As summarized by Deputy Assistant Attorney General Bies, the "individualized publication decision process includes consultation with interested Executive Branch agencies and consideration of a number of factors, which are set out in the Best Practices Memo." *Id.*  When OLC receives a FOIA request and an OLC opinion is responsive to that request, OLC similarly "consider[s]

whether to waive applicable privileges and release the opinion as a matter of administrative discretion." *Id.* (citing Best Practices Memo at 6).

Shortly after receiving OLC's response letter, CREW filed the present lawsuit. As described in the Complaint,

> This is an action under the Administrative Procedure Act ("APA") and the Freedom of Information Act ("FOIA") challenging as arbitrary, capricious, and contrary to law the failure of the U.S. Department of Justice ("DOJ") to comply with 5 U.S.C. § 552(a) by refusing to make available to the public opinions of the Office of Legal Counsel ("OLC") on questions of law, which constitute unpublished statements of policy and interpretations that have been adopted by the executive branch, and final opinions made by OLC in the adjudication of disputes involving executive branch agencies.

Compl. ¶ 1.  The Complaint contains a single claim for relief, alleging that "OLC and DOJ have refused to make all OLC binding legal opinions available for public inspection and copying, even upon specific request," and that "Defendants' refusal to make public this body of secret law created by OLC is arbitrary, capricious, and contrary to law."  *Id.* ¶¶ 38, 40.  Accordingly, CREW's Complaint requests that the Court grant "a declaratory judgment that defendants' refusal to make public all binding legal opinions issued by OLC is arbitrary, capricious, and contrary to law," and an injunction "directing OLC and DOJ to make all binding legal opinions issued by OLC available for public inspection and copying."  *Id.* ¶¶ 41, 42.

## STANDARD OF REVIEW

Defendants—the United States Department of Justice, Attorney General Eric Holder, and Assistant Attorney General Virginia A. Seitz—move to dismiss CREW's Complaint for lack of subject-matter jurisdiction, under Rule 12(b)(1) of the Federal Rules of Civil Procedure. CREW bears the burden of showing subject-matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Indeed, it is "presume[d] that federal courts lack jurisdiction unless the

contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (internal quotation marks omitted).

Defendants also move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In evaluating the sufficiency of the complaint, the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although a court must accept all factual allegations as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Id.* (internal quotation marks omitted).

## ARGUMENT

### I.     CREW LACKS STANDING TO CHALLENGE OLC'S ALLEGED REFUSAL TO MAKE ITS BINDING OPINIONS PUBLIC.

CREW's Complaint seeks to challenge OLC's purported policy of "refus[ing] to make all OLC binding legal opinions available for public inspection and copying[.]" Compl. ¶ 38. To obtain the type of prospective relief that CREW seeks, *id.* ¶ 42, CREW must demonstrate a likelihood of being subject to this alleged policy in the future. The allegations in CREW's Complaint fail to meet this standard, however, and thus the Complaint should be dismissed for lack of subject-matter jurisdiction.

The "irreducible constitutional minimum" for standing to bring suit requires a plaintiff to show that he or she "suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Worth v. Jackson*, 451 F.3d 854, 857-58 (D.C. Cir. 2006) (quoting *Lujan*, 504 U.S.

at 560).  When a plaintiff seeks prospective relief, the inquiry becomes "whether that prospective injury qualifies as an injury in fact."  *Worth*, 451 F.3d at 858; *see also Chang v. United States*, 738 F. Supp. 2d 83, 88 (D.D.C. 2010) (holding that those "seeking injunctive relief must establish a fourth element," namely a "real and immediate threat of repeated injury demonstrated by more than past exposure to illegal conduct" (internal quotation marks omitted)).

To establish a prospective injury in fact, a plaintiff must "show a likelihood of future injury to himself as an individual."  *Chang*, 738 F. Supp. 2d at 89 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 107-08 (1983)); *see also Haase v. Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987) ("[M]ore than a nebulous assertion of the existence of a 'policy' is required to establish standing.  The plaintiffs must not only demonstrate its existence but also that they are likely to be subjected to the policy again.").

Here, CREW has failed to meet this standard for two reasons.  First, CREW has not established that it is challenging a specific policy actually being implemented by OLC.  To be sure, CREW alleges that "OLC and DOJ have refused to make all OLC binding legal opinions available for public inspection and copying," Compl. ¶ 38, which implies that OLC has a specific policy not to publicly release all of its "binding legal opinions."[1]  *See also id.* ¶ 40 ("Defendants' refusal to make public this body of secret law created by OLC is arbitrary, capricious, and contrary to law.").  But these allegations are contradicted by the very documents cited in CREW's Complaint as purportedly demonstrating this policy.  For example, the letter from Deputy Assistant Attorney General Bies (cited at ¶ 33) explains that OLC does not have a blanket policy with respect to its opinions; to the contrary, OLC "make[s] an individualized, case-by-

---

[1] Of course, even this alleged policy is rather vague.  As discussed in Section IV.A, *infra*, the phrase "binding legal opinions" is susceptible to many different interpretations, particularly as applied to the various types of legal advice provided by OLC.

case determination with respect to whether each opinion of our Office is appropriate for publication." Exh. 2 at 1. OLC's Best Practices Memo (cited at ¶ 30) similarly makes this point clear. *See* Exh. 3 at 5-6. CREW thus lacks standing to pursue its prospective relief, because it has not "demonstrate[d the challenged policy's] existence[.]" *Haase*, 835 F.2d at 911.

Second, even if CREW could establish the existence of the challenged policy, CREW's allegations do not establish a likelihood of being subject to the purported policy in the future. The closest CREW comes is its allegation that "CREW also plans to file future FOIA requests for additional legal opinions issued by OLC concerning a range of controversial issues of public importance." Compl. ¶ 7. But this allegation contains nothing more than "some day" intentions, which are insufficiently specific to establish standing. *See Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."); *see also Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 93-94 (D.D.C. 2013) (holding that plaintiffs' allegations that they "regularly file FOIA requests with CIA and will continue to do so in the future" were insufficient to confer standing to challenge a policy or practice of the CIA).[2]

In sum, CREW has not established standing to challenge OLC's purported policy, and certainly not to obtain the type of equitable and prospective relief requested here. Thus, the Complaint should be dismissed for lack of subject-matter jurisdiction.

---

[2] In fact, CREW has not even established that it was *ever* subjected to OLC's alleged policy. Although CREW alleges that it has previously filed FOIA requests regarding OLC opinions, Compl. ¶¶ 6-7, it does not allege that the records sought in those prior requests were improperly withheld pursuant to the alleged policy of withholding "binding" legal opinions. Moreover, if any records *had* been improperly withheld in response to previous FOIA requests, CREW could have litigated the matter under FOIA itself. These alleged past FOIA requests therefore cannot establish standing for the plaintiff with respect to this suit, which seeks only prospective relief.

## II.   JUDICIAL REVIEW OF CREW'S APA LAWSUIT IS PRECLUDED, BECAUSE FOIA ITSELF PROVIDES AN ADEQUATE, ALTERNATIVE REMEDY.

The ultimate relief sought by CREW's lawsuit here is access to certain OLC records, which is the same relief that CREW can seek through FOIA itself.   Because FOIA provides CREW with an adequate remedy, therefore, the present APA lawsuit cannot proceed.   This conclusion is consistent with the overwhelming weight of caselaw, both in this Circuit and elsewhere.

### A.   The APA Does Not Permit Review of CREW's Claim Here.

As discussed above, the APA provides for judicial review only when "there is no other adequate remedy in a court[.]"   5 U.S.C. § 704; *see generally Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action.").   The D.C. Circuit has further explained that "the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'"   *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (quoting *El Rio Santa Cruz Neighborhood Health Ctr. v. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1272 (D.C. Cir. 2005)).

Consistent with this framework, courts within this Circuit have overwhelmingly concluded that litigants cannot bring APA claims when the type of relief they seek is available under FOIA itself.   *See, e.g., Feinman v. FBI*, 713 F. Supp. 2d 70, 76 (D.D.C. 2010) ("This court and others have uniformly declined jurisdiction over APA claims that sought remedies made available by FOIA."); *see also Am. Chemistry Council, Inc. v. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 66 (D.D.C. 2013); *Pub. Employees for Envtl. Responsibility v. U.S. Section Int'l Boundary & Water Comm'n*, 839 F. Supp. 2d 304, 317 (D.D.C. 2012); *Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 795 F. Supp. 2d 85, 95 (D.D.C. 2011); *Kenney v. Dep't of Justice*, 603

F. Supp. 2d 184, 190 (D.D.C. 2009); *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 308 (D.D.C. 2007); *Physicians Comm. for Responsible Med. v. Dep't of Health & Human Servs.*, 480 F. Supp. 2d 119, 121 n.2 (D.D.C. 2007); *Edmonds Inst. v. Dep't of the Interior*, 383 F. Supp. 2d 105, 111 (D.D.C. 2005); *Sierra Club v. Dep't of the Interior*, 384 F. Supp. 2d 1, 30 (D.D.C. 2004).

Courts outside this Circuit have reached the same conclusion. *See Rimmer v. Holder*, 700 F.3d 246, 262 (6th Cir. 2012) ("[T]he district court's ability to conduct a *de novo* review of Rimmer's FOIA request and, if it were to rule in Rimmer's favor, to order relief identical to that provided under the APA, *i.e.*, production of the unredacted documents Rimmer seeks, clearly provides an alternate adequate remedy in court and thus triggers § 704's bar on claims brought under the APA."); *see also Cent. Platte Natural Res. Dist. v. Dep't of Agric.*, 643 F.3d 1142, 1149 (8th Cir. 2011); *Walsh v. Dep't of Veterans Affairs*, 400 F.3d 535, 537-38 (7th Cir. 2005); *Columbia Riverkeeper v. Fed. Energy Regulatory Comm'n*, 650 F. Supp. 2d 1121, 1126 (D. Or. 2009); *Lion Raisins, Inc. v. Dep't of Agric.*, 636 F. Supp. 2d 1081, 1115 (E.D. Cal. 2009).

Here, CREW could plainly seek the same ultimate relief it seeks in this lawsuit (access to OLC opinions) through FOIA itself.  CREW simply needs to submit a standard FOIA request to OLC pursuant to 5 U.S.C. § 552(a)(3), requesting disclosure of whatever OLC opinions to which CREW would like access.  Of course, CREW's argument here is that "binding" OLC opinions should be subject to affirmative disclosure under § 552(a)(2).  But the D.C. Circuit has squarely held that the proper method for a person to challenge an agency's failure to publish documents under § 552(a)(2) is for the person to submit a request for those documents pursuant to § 552(a)(3).  *See Am. Mail Line, Ltd. v. Gulick*, 411 F.2d 696, 701-02 (D.C. Cir. 1969) ("[I]f the

agency refuses to comply with paragraphs (1) or (2) it is then subject to suit under the processes spelled out in paragraph (3)."); *see also Irons v. Schuyler*, 465 F.2d 608, 610-11 (D.C. Cir. 1972).

Once CREW submits this FOIA request to OLC—in which CREW can argue for disclosure under both §§ 552(a)(2) and (a)(3)—CREW can challenge any withholding determinations made by OLC under FOIA.[3]   Specifically, after CREW exhausts all administrative remedies available under FOIA, CREW can then bring suit in federal district court, obtain de novo review of the agency's withholdings, and request the court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).  This process is plainly an adequate method for obtaining CREW's desired result here, which is access to OLC opinions. *Cf. Garcia*, 563 F.3d at 522-23 (stating that "relief will be deemed adequate where a statute affords an opportunity for *de novo* district-court review of the agency action" (internal quotation marks omitted)).

To be sure, the relief requested in this APA lawsuit may be slightly different from the relief available under FOIA.  For instance, it is doubtful that FOIA would permit a court to enter an injunction "directing OLC and DOJ to make all binding legal opinions issued by OLC available for public inspection and copying." Compl. ¶ 42. *Cf. Kennecott Utah Copper Corp. v. Dep't of Interior*, 88 F.3d 1191, 1203 (D.C. Cir. 1996) (holding that FOIA's remedial provision, § 552(a)(4)(B), authorizes courts only to order the disclosure of documents to the complaining party, rather than publication in the Federal Register, even though such publication may be

---

[3] Of course, any FOIA request would need to comply with FOIA's requirement that the request "reasonably describes such records[.]"  5 U.S.C. § 552(a)(3)(A).  Here, given the lack of clarity about CREW's use of the term "binding," *see* Section IV.A, *infra*, it is not clear that a request for "all OLC opinions that are *binding* on the executive branch" would meet this requirement.

required).  Even assuming a more limited remedy under FOIA, however, that remedy is still plainly "of the 'same genre'" as what CREW requests here.  *Garcia*, 563 F.3d at 522. Specifically, a FOIA lawsuit would still provide CREW with the ultimate relief sought here— namely, disclosure of the OLC opinions.  *Cf. Kennecott*, 88 F.3d at 1203 ("Providing documents to the individual fully relieves whatever informational injury may have been suffered by that particular complainant; ordering publication goes well beyond that need.").

In sum, FOIA offers CREW essentially the same relief that CREW seeks here. Consistent with the overwhelming weight of authority, therefore, CREW's lawsuit must be dismissed because FOIA provides an adequate, alternate remedy that precludes CREW's APA claim.[4]

## B.   CREW's Present Lawsuit Cannot Be Construed as a FOIA Lawsuit.

In response to the above argument, CREW may attempt to argue that the present lawsuit was brought under both the APA and FOIA, and thus the Court can still consider CREW's claim as a pure FOIA claim.  *See* Defendants' Mot. for Extension of Time to Respond to the Compl. (ECF No. 6) at ¶ 7 (noting that "plaintiff contends that it filed suit under both the APA and the FOIA").  But this argument is untenable:  neither this lawsuit, nor the underlying correspondence with OLC, properly invoked FOIA as the basis for CREW's claim here.

First, the present lawsuit does not contain any FOIA claims, but instead contains only an APA claim.  Indeed, the present Complaint contains only a single claim for relief, which invokes hallmark APA language.  *Compare* 5 U.S.C. § 706(2)(A) (permitting courts to set aside agency

---

[4] Certainly, some FOIA-related claims may properly be brought under the APA rather than FOIA.  *Cf. Pub. Citizen, Inc. v. Lew*, 127 F. Supp. 2d 1, 9 (D.D.C. 2000) ("Other FOIA actions outside the scope of § 552(a)(4)(B) . . . are reviewed under the standards set forth in § 706 of the APA.").  CREW's claim here, however, seeks the core relief provided by FOIA— namely, disclosure of particular records—and thus can be fully remedied by FOIA itself.

action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"), *with* Compl. ¶ 40 ("Defendants' refusal to make public this body of secret law created by OLC is arbitrary, capricious, and contrary to law.").[5]   Similarly, the Civil Cover Sheet that CREW completed and filed along with the Complaint makes clear that CREW's claim for relief is under the APA.  *See* Civil Cover Sheet (ECF No. 01-1) at 1-2 (when asked to describe the "nature of suit," CREW selected "Administrative Procedure Act/Review or Appeal of Agency Decision" rather than "Freedom of Information Act").  Thus, CREW's present Complaint cannot be construed as including a FOIA claim.

Second, even if it were possible to construe the Complaint in that manner, CREW still could not proceed under FOIA because it never submitted a FOIA request to OLC seeking the records at issue here—a precondition for any FOIA suit.  *See* 5 U.S.C. § 552(a)(3)(A) (stating that "each agency, *upon any request for records* . . . shall make the records promptly available to any person" (emphasis added)); *see also Moayedi v. U.S. Customs & Border Prot.*, 510 F. Supp. 2d 73, 81 (D.D.C. 2007) ("[T]he FOIA requires that a request be 'made in accordance with the agency's published FOIA rules stating the time, place, fees (if any), and procedures to be followed.'" (quoting 5 U.S.C. § 552(a)(3)(A), internal modifications omitted)).  Here, CREW's Complaint does not allege that CREW ever submitted a FOIA request to OLC for all "binding" OLC opinions.

Indeed, the only correspondence alleged in the Complaint is the July 3, 2013 letter from CREW to Assistant Attorney General Seitz.  *See* Compl. ¶ 32; Exh. 1.  But this letter cannot reasonably be construed as a FOIA request.  For one thing, the letter does not actually request

---

[5] Importantly, CREW's claim for relief section does not include the type of allegations typically associated with a FOIA claim—such as allegations regarding the improper withholding of records, the exhaustion of administrative remedies, or even the existence of a FOIA request for the records.  *See generally* Compl. ¶¶ 35-42.

that OLC disclose any specific records directly to CREW; the letter instead presents a legal argument that OLC has failed to comply with its statutory obligations under FOIA.  *See* Exh. 1 at 1-2.  As the end of the letter makes clear, CREW viewed these legal arguments as entirely separate from a FOIA request, which would be governed by a different procedural framework (such as giving agencies twenty days to respond to the request and requiring administrative exhaustion).  *See* Exh. 1 at 2 (arguing that "OLC should *immediately* begin the process of disclosing all of its opinions," and stating that "[i]f OLC continues to refuse to comply with its legal obligations, we will seek relief from the courts to ensure the public has access to this growing body of secret law" (emphasis added)).

Furthermore, the letter to Assistant Attorney General Seitz does not contain any of the typical language seen in a FOIA request—especially from a sophisticated FOIA requester like CREW, which clearly knows how to submit a FOIA request.  *See* Compl. ¶¶ 5-8.  This point is made clear by a quick comparison between the letter sent to Assistant Attorney General Seitz in this case, and the specific FOIA request mentioned in CREW's Complaint (seeking "all opinions discussing the authority of the president as well as any executive branch agency or agency component to conduct domestic and foreign surveillance"), Compl. ¶ 7, which was submitted to OLC on August 21, 2013—the day after Deputy Assistant Attorney General Bies responded to CREW's letter in this case, and six days before CREW filed this Complaint.  *See* Freedom of Information Act Request from Weismann to Farris (attached hereto as Exhibit 4).  That FOIA request is different from the letter to Assistant Attorney General Seitz in several material respects:  it was sent to OLC's FOIA contact (as required by DOJ regulations, *see* 28 C.F.R. § 16.3(a)); it makes an actual request for records; it includes a request for a *Vaughn* index; it discusses segregability of records; and it includes an elaborate discussion of FOIA fee waivers.

*See* Exh. 4 at 2-5.  Plainly, CREW's letter to Assistant Attorney General Seitz is of a markedly different character, and cannot reasonably be construed as a FOIA request.[6]

In sum, CREW's lawsuit must be dismissed because the sole claim brought here is an APA claim, which is precluded because FOIA itself provides an adequate, alternate remedy.

## III.    EVEN IF APA REVIEW WERE AVAILABLE, CREW FAILS TO CHALLENGE ANY FINAL AGENCY ACTION.

Even if CREW's lawsuit were able to proceed under the APA, it must still be dismissed for another threshold reason:  CREW does not challenge any discrete, final agency action undertaken by OLC.  Rather, the Complaint presents a broad challenge to OLC's general compliance with FOIA.  This type of generalized, non-specific challenge is not cognizable under the APA and must be dismissed.

Under the APA, a plaintiff may obtain judicial review only of "final agency action[.]" 5 U.S.C. § 704. To constitute "final agency action," an agency's action must have two characteristics: the action "must mark the consummation of the agency's decisionmaking process;" and the action "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks omitted).

Even when a plaintiff is challenging an agency's failure to undertake a specific action, the plaintiff must still "assert[] that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004).  Additionally, a plaintiff "must direct its attack against some particular 'agency action' that causes it harm," as

---

[6] Finally, even if the July 3, 2013 letter to Assistant Attorney General Seitz were a FOIA request, this lawsuit still could not proceed because CREW did not exhaust its administrative remedies prior to filing suit.  *See Oglesby v. Dep't of Army*, 920 F.2d 57, 63 (D.C. Cir. 1990).

opposed to seeking broad improvements within an agency's overall program. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).

Here, CREW's Complaint fails to identify a discrete, specific agency action that it is challenging. CREW's Complaint attempts to challenge a purported policy within OLC not to publish all of its "binding legal opinions." Compl. ¶ 38. While it is unclear what CREW means by this phrase, *see* Section IV.A, *infra*, OLC does not in any case have such a blanket policy. To the contrary, as discussed in Section I, and as OLC informed CREW prior to the initiation of this lawsuit, OLC decides whether to publish each opinion on an individualized, case-by-case basis. *See* Bies Letter at 1; Best Practices Memo at 5-6. Thus, OLC's alleged policy cannot provide the requisite final agency action for CREW's APA claim here. *See Ctr. for Auto Safety v. Nat'l Hwy. Traffic Safety Admin.*, 452 F.3d 798, 809-10 (D.C. Cir. 2006) (agency policy setting forth guidelines while retaining discretion to engage in case-by-case evaluation is not "final agency action" under APA).

Even if there were such a policy, moreover, a challenge to this overall policy—as opposed to individualized decisions made pursuant to the policy—would not be cognizable under the APA. In that respect, CREW's claim is just like the plaintiff's claims in *National Wildlife Federation*, which challenged the Bureau of Land Management's "land withdrawal review program," as opposed to the individual decisions made pursuant to that program. *See Nat'l Wildlife Fed'n*, 497 U.S. at 890-94. As the Supreme Court held there, the plaintiff "cannot seek *wholesale* improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made. Under the terms of the APA, [the plaintiff] must direct its attack against some particular 'agency action' that causes it harm." *Id.* at 891. The same is true here: CREW cannot challenge OLC's

overall publication practices, as opposed to individualized decisions made with respect to specific opinions. *Nat'l Wildlife Fed'n*, 497 U.S. at 892-93; *see also Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) ("While a single step or measure is reviewable, an on-going program or policy is not, in itself, a 'final agency action' under the APA."). CREW's lawsuit must therefore be dismissed for failing to challenge a discrete final agency action.

## IV. CREW'S APA CLAIM WOULD ALSO FAIL ON THE MERITS, BECAUSE FOIA DOES NOT REQUIRE OLC TO PUBLISH ALL OF ITS "BINDING" LEGAL OPINIONS.

Finally, even assuming that CREW could overcome the three threshold barriers to judicial review discussed above, CREW's Complaint must nonetheless be dismissed. Even taking the allegations in the Complaint at face value, OLC's alleged policy is plainly legitimate. For one thing, OLC opinions do not fall within the categories of documents that must be affirmatively disclosed under § 552(a)(2). Furthermore, OLC opinions are generally exempt from disclosure under FOIA because they are privileged documents. Indeed, numerous courts have upheld OLC's withholding of specific OLC opinions as privileged. OLC's purported policy—refusing to make public *all* of its "binding legal opinions"—can thus hardly be described as arbitrary and capricious.

That conclusion is further confirmed by the Executive Branch's important interest in obtaining confidential legal advice as part of its decisionmaking processes. OLC's advice-giving function plays a critical role in assisting the President in "fulfill[ing] his or her constitutional duties to preserve, protect, and defend the Constitution, and to 'take Care that the Laws be faithfully executed.'" Best Practices Memo at 1 (quoting U.S. Const. art. II, § 3). Adopting the implicit premise of CREW's Complaint here—that any controlling legal advice provided to the Executive Branch must be disclosed pursuant to FOIA—would call into question the Executive Branch's ability to obtain *any* confidential legal advice. Such a result would raise significant

Constitutional concerns, and CREW's proposed interpretation of FOIA should be rejected on this basis alone.  Even aside from the threshold arguments discussed above, therefore, CREW's Complaint must nonetheless be dismissed for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).

> **A.      CREW's Complaint is Ambiguous as to What Constitutes a "Binding" OLC Opinion.**

Before discussing the substantive reasons why CREW's Complaint fails to state a valid claim, there is a definitional issue that must first be addressed.  Specifically, CREW's Complaint is ambiguous as to what exactly OLC is allegedly required to publish.  CREW alleges that OLC must "make available for public inspection and copying all OLC opinions that are binding on the executive branch."  Compl. ¶ 32.  But this category of materials—"OLC opinions that are binding on the executive branch"—is subject to numerous possible interpretations and applications.[7]  To fully consider the merits of CREW's lawsuit, therefore, CREW must first articulate what it means by "binding" OLC opinions.

To be sure, OLC does not dispute that much of its legal advice authoritatively resolves legal questions for Executive Branch policymakers as a matter of custom and practice, and is "binding" in this sense.  *See* Best Practices Memo at 1 ("OLC's core function, pursuant to the Attorney General's delegation, is to provide controlling advice to Executive Branch officials on questions of law[.]").  But OLC's legal advice is typically not "binding" in the sense that it creates enforceable legal obligations, particularly for private parties.  Depending on CREW's use of the term "binding," therefore, CREW's Complaint may be seeking all of OLC's advice, none of OLC's advice, or something in between.

---

[7] This ambiguity highlights why litigation over individual, specific OLC opinions—as opposed to the entire category of OLC opinions in the abstract—is far more sensible.  *See* Sections II-III, *supra*.

Clarity about CREW's use of the term "binding" is particularly important given the variety of functions that OLC performs; the different manners in which OLC may provide advice; and the different client relationships that OLC may possess with different entities.  Each of these factors may affect whether any particular piece of OLC advice qualifies as "binding," depending on what CREW means by that term.  Consequently, in order to understand how CREW's claim applies to the various sorts of advice OLC actually provides, CREW must clarify how it understands the term "binding," and at what point along the continuum of possible meanings of "binding" the alleged publication requirement kicks in.

For example, at one end of the continuum, the word "binding" may imply a command requiring unequivocal obedience.  *See, e.g.*, Black's Law Dictionary (9th ed. 2009) (defining "binding" as "requiring obedience").  But this definition does not track well with all forms of OLC advice—particularly legal advice provided to superiors such as the Attorney General or the President—because OLC's advice can be overruled by those entities.  And for advice provided to other entities, even setting aside the possibility of appeal to the Attorney General or the President, there may not be any formal source of law *mandating* that the client agency follow OLC's advice.  Alternatively, if the word "binding" is understood as meaning advice that is adhered to as a matter of custom and practice, that definition would likely capture far more of OLC's advice.[8]

---

[8] As one commentator—who was also then an OLC official—has noted, "the question of whether (and in what sense) the opinions of the Attorney General, and, more recently, the Office of Legal Counsel, are legally binding within the executive branch remains somewhat unsettled." Randolph D. Moss, *Executive Branch Legal Interpretation: A Perspective from the Office of Legal Counsel*, 52 Admin. L. Rev. 1303, 1318 (2000).  That question has not required conclusive resolution because executive agencies have customarily treated OLC advice as binding.  *See id.* at 1320 ("[W]e have been able to go for over two hundred years without conclusively determining whether the law demands adherence to Attorney General Opinions because agencies have in practice treated these opinions as binding.").

Additionally, even if OLC's legal advice is "binding" in the sense that it authoritatively answers a legal question confronting a client agency, that advice ordinarily will not conclusively determine the outcome of the policy deliberation undertaken by the client agency. After an agency receives legal advice from OLC, that advice may turn out to be irrelevant to the agency's policy decisions (if, for example, the agency declines to choose a policy that OLC considers to be legally available), or only tangentially relevant (if, for example, the agency's ultimate decision rests primarily on issues other than the legal advice rendered by OLC). To the extent that the term "binding" requires a dispositive effect on an agency's final policy decision, therefore, most OLC opinions will not meet this criterion (and in fact OLC may have no practical way of knowing whether such a criterion is met with respect to any particular opinion).

Finally, setting aside the ambiguities discussed above, the term "binding" does not accurately describe all of the legal advice that OLC provides on a day-to-day basis. OLC's formal legal opinions—those opinions that have been finalized as set forth in OLC's Best Practices Memo, *see* Exh. 3 at 2-5—are generally authoritative within the Executive Branch on the legal issues resolved in those opinions (although they do not resolve the policy decisions facing the client agencies). But OLC provides *informal* legal advice as well; and CREW alleges here that OLC's informal opinions also constitute binding precedents. *See* Compl. ¶ 20 ("The binding opinions OLC renders include what DOJ has referred to in records schedules it submits to the National Archives and Records Administration as . . . 'informal opinions,' which similarly serve as precedents, and constitute a body of executive law on important matters."). As made clear by OLC's records schedule itself, however, OLC's informal advice can frequently be very informal—such as "oral and email advice concerning a wide range of legal issues[.]" *See* Office

of Legal Counsel, Request for Records Disposition Authority (attached hereto as Exh. 5) at 3 (discussing the category of "File Memoranda").

This type of informal advice—sometimes provided "under severe time constraints," under which OLC may not have had sufficient time for a "proper and thorough review of the relevant issues"—may not possess the same "binding" quality or be given the same precedential effect as a fully finalized opinion.  Best Practices Memo at 2; *see, e.g.*, *Brennan Ctr. for Justice v. Dep't of Justice*, 697 F.3d 184, 188, 190 (2d Cir. 2012) (discussing how OLC provided a client agency with "tentative" advice that expressly noted it "might need to be altered after further analysis," and ultimately the advice was withdrawn after fuller consideration of the matter); *cf.* The Hon. Samuel A. Alito, Jr., *Change in Continuity at the Office of Legal Counsel*, 15 Cardozo L. Rev. 507, 508 (1993) (discussing OLC's "formal opinion-writing role," but noting that OLC performs "other, very different tasks as well" such as the "great deal of informal legal advice to the White House").  Depending on the context in which OLC's informal advice is provided and the meaning of the term "binding," then, such informal advice may not be "binding" in the same way as a formal opinion.[9]

In sum, it is unclear what exactly CREW believes OLC must disclose pursuant to § 552(a)(2).  OLC performs a variety of functions in a variety of different contexts, and the authoritativeness of OLC's legal advice will naturally vary across these functions and contexts.  To properly consider the merits of CREW's legal claim, therefore, CREW must first clarify what

---

[9] To be clear, when OLC as an office reaches a considered view on an issue, OLC's view is typically authoritative within the Executive Branch pending further review—even if that view is provided only as informal advice.  But the type of "informal advice" documents described in the "File Memoranda" category, Exh. 5 at 3, may not always represent OLC's considered or definitive views on an issue, and thus may not possess the same authoritative quality as a final opinion.  Furthermore, even when OLC provides informal advice representing its views as an office, such informal advice typically does not have the same precedential effect as a fully formalized opinion.  *See, e.g.*, *Brennan Ctr.*, 697 F.3d at 188, 190.

it considers to fall within the category of "binding legal opinions issued by OLC[.]"  Compl. ¶ 42.

###### B.    OLC's Alleged Policy Cannot Be Considered Arbitrary and Capricious.

Notwithstanding the lack of clarity about CREW's precise legal claim, it is apparent that OLC is not required to publicly disclose all of its formal and informal legal opinions (and potentially more, depending on the scope of CREW's use of the term "binding").  OLC's legal opinions do not fall within the type of documents requiring affirmative disclosure under 5 U.S.C. § 552(a)(2), and in any event OLC's advice is generally exempt from disclosure as privileged information, *id.* § 552(b)(5).  At an absolute minimum, OLC's alleged policy here—the refusal to disclose *all* OLC opinions—cannot be considered arbitrary and capricious, particularly given the number of judicial opinions confirming the privileged nature of OLC's opinions.

Under the APA, "the party challenging an agency's action as arbitrary and capricious bears the burden of proof."  *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*, 789 F.2d 26, 37 (D.C. Cir. 1986) (en banc).  The arbitrary-and-capricious standard of review "is a highly deferential one" that "presumes agency action to be valid."  *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 997 (D.C. Cir. 2008) (internal quotation marks omitted).  A court may not "substitute its judgment for that of the agency," and ultimately may reverse only if the agency has committed "a clear error of judgment."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

Here, because CREW is challenging OLC's alleged policy as a general matter (and not with respect to any particular opinions), CREW must demonstrate that the overall policy is arbitrary and capricious.  And because CREW is challenging OLC's alleged "refus[al] to make *all* OLC binding legal opinions available for public inspection and copying," Compl. ¶ 38 (emphasis added), to invalidate this policy CREW must demonstrate that there is no valid basis

for OLC to withhold *any* of its binding opinions.  In other words, the policy would still be rational even if some small number of OLC opinions ought to have been publicly disclosed—those opinions would not demonstrate it was arbitrary for OLC to refuse to make *all* of its opinions public.

CREW plainly cannot carry its burden here.  OLC's opinions are not the type of documents requiring affirmative disclosure under FOIA, and in any event are generally exempt from disclosure pursuant to the attorney-client and deliberative process privileges.

> **1.   OLC's Opinions Are Neither Final Opinions Made in the Adjudication of Cases, Nor Statements of Policy Adopted by the Agency.**

The predicate of CREW's Complaint is that OLC's "binding legal opinions" must be affirmatively disclosed pursuant to § 552(a)(2) as "final opinions made in the adjudication of cases," and "statements of policy and interpretations adopted by the agency and not published in the Federal Register."  Compl. ¶ 36.  CREW's claim fails, however, because OLC opinions do not fall within either category.

First, OLC opinions are not final opinions made in the adjudication of cases, because OLC does not issue opinions in adversarial disputes involving private parties.  *See Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 603 (D.C. Cir. 2001) (holding that a report was not subject to affirmative disclosure because it "sets forth the conclusions of a voluntarily undertaken internal agency investigation, not a conclusion about agency action (or inaction) *in an adversarial dispute with another party*" (emphasis added)).  The full text of § 552(a)(2)(A), often elided by ellipses, clearly evokes agency adjudication of private rights: "final opinions, *including concurring and dissenting opinions, as well as orders*, made in the adjudication of cases" (emphasis added).  And it is precisely in this context—agency adjudication of private rights—that the Supreme Court decided *Sears*.  *See* 421 U.S. at 142-44.

Furthermore, OLC opinions generally cannot be considered "final opinions," because they do not finally dispose of any agency action—OLC simply provides legal advice relating to an agency's prospective policy choices, and that advice may or may not ultimately be relevant to an agency's final decision.   This description contrasts starkly with "final opinions" under § 552(a)(2), which the Supreme Court has stated will "not only invariably explain agency action already taken or an agency decision already made, but also constitute 'final dispositions' of matters by an agency."   *Sears*, 421 U.S. at 153-54.   As explained in other court decisions, OLC itself does not possess policymaking authority; instead, OLC merely provides legal advice to other Executive Branch actors, who then make policy decisions within the legal framework articulated by OLC.   *See Brennan Ctr.*, 697 F.3d at 203 (2d Cir. 2012) ("'OLC does not purport, and in fact lacks authority, to make policy decisions.   OLC's legal advice and analysis informs the decisionmaking of Executive Branch officials on matters of policy, but OLC's legal advice is not itself dispositive as to any policy adopted.'" (quoting Decl. of Paul P. Colborn, OLC Special Counsel)).   OLC's limited advisory role in the policymaking process thus confirms that OLC opinions are not "final opinions" subject to affirmative disclosure.   *See Elec. Privacy Info. Ctr. v. Dep't of Justice*, 584 F. Supp. 2d 65, 74-78 (D.D.C. 2008) (rejecting the "final opinion" argument with respect to OLC documents); *see also Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 187-89 (1975).

The same reasons explain why OLC opinions are not final statements of policy adopted by an agency.   OLC does not have authority to act on or implement matters of policy, and accordingly OLC does not adopt statements of policy within the meaning of FOIA.   Rather, it is the client agencies that make the ultimate policy decisions, informed by OLC's legal advice, that must adopt a statement of interpretation or policy for it to qualify for publication under

§ 552(a)(2)(B) ("statements of policy and interpretations *which have been adopted by the agency*") (emphasis added).  This understanding is confirmed by the D.C. Circuit's opinion in *Vietnam Veterans of Am. v. Dep't of Navy*, 876 F.2d 164, 164-65 (D.C. Cir. 1989), which held that when an agency has authority only to dispense legal advice on certain topics, but not to actually act on behalf of the agency on those topics, the legal opinions do not constitute statements of policy.

Finally, the fact that OLC opinions are not § 552(a)(2) documents is confirmed by the weight of authority holding that specific OLC opinions are exempt from disclosure under FOIA as privileged.  In *Sears*, the Supreme Court indicated that § 552(a)(2) generally does not cover deliberative documents.  421 U.S. at 153.  Undercutting CREW's argument that OLC opinions are subject to § 552(a)(2), then, courts have routinely recognized that specific OLC opinions and other advice documents are properly withheld as privileged.  *See* Section IV.B.2, *infra* (citing cases).  This ample caselaw not only provides an independent basis for non-disclosure of OLC opinions, *see id.*, but also shows that OLC opinions are not covered by § 552(a)(2) to begin with.

OLC is not required to disclose its opinions under § 552(a)(2), therefore, and accordingly CREW cannot demonstrate that OLC's purported policy of not disclosing its opinions is arbitrary and capricious.  Thus, CREW's claim must be dismissed.

### 2. OLC's Opinions Are Generally Exempt From Disclosure Pursuant to Both the Attorney-Client Privilege and the Deliberative Process Privilege.

Even assuming that OLC opinions otherwise fall within a § 552(a)(2) category, they are nonetheless generally exempt from disclosure pursuant to the attorney-client and deliberative

process privileges.[10]   *See Sears*, 421 U.S. at 154 n.21 (disclosure under § 552(a)(2) is not required where a record falls within FOIA's Exemption 5).   Indeed, numerous courts have held that specific OLC opinions are exempt from disclosure pursuant to one or both of these privileges.   Almost by definition, then, OLC's alleged policy of not releasing all of its opinions cannot be described as arbitrary and capricious.   An agency's policy that is consistent with the majority of judicial decisions on the topic should not be overturned as arbitrary and capricious.

The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).   The privilege applies to government officials seeking advice from government attorneys, just as it does to private parties.   *See United States v. Jicarilla Apache Nation*, 131 S. Ct. 2313, 2321 (2011); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).

Here, OLC opinions generally fall within the attorney-client privilege.   "OLC's central function is to provide . . . controlling legal advice to Executive Branch officials[.]"   Best Practices Memo at 1.   That advice aims to "focus intensively on the central issues raised by a [client agency's] request[.]"   *Id.* at 2.   And although OLC "operates from the presumption that it should make its significant opinions fully and promptly available to the public," frequently there will be "countervailing considerations" that lead OLC to conclude that public disclosure is inappropriate.   *Id.* at 5.

---

[10] Many OLC opinions could be withheld on the basis of additional exemptions as well, such as the presence of classified information, § 552(b)(1), or information specifically exempted from disclosure by statute, § 552(b)(3).   At a minimum, however, OLC opinions may generally be withheld pursuant to the deliberative process and attorney-client privileges.   Thus, these two privileges are sufficient to justify the rationality of OLC's alleged policy of not automatically disclosing *all* of its opinions.

One clear example (although not the only one) demonstrating why OLC's advice is covered by the attorney-client privilege is when an agency requests legal advice about a proposed course of action, but then OLC concludes that such actions would be legally impermissible.  As the Best Practices Memo explains:

> OLC will also decline to publish opinions when doing so is necessary to . . . protect the confidentiality of information covered by the attorney-client relationship between OLC and other executive offices.  The President and other Executive Branch officials, like other public- and private-sector clients, sometimes depend upon the confidentiality of legal advice in order to fulfill their duties effectively.  An example is when an agency requests advice regarding a proposed course of action, the Office concludes it is legally impermissible, and the action is therefore not taken.  If OLC routinely published its advice concerning all contemplated actions of uncertain legality, Executive Branch officials would be reluctant to seek OLC advice in the early stages of policy formulation—a result that would undermine rule-of-law interests.

Exh. 3 at 5-6.  Similarly, a document cited in CREW's own Complaint, a law review article prepared by former OLC officials, also observes that OLC opinions may validly be withheld on the basis of the attorney-client privilege, particularly in the circumstances described above:

> OLC should consider the views regarding disclosure of the client agency that requested the advice.  Ordinarily, OLC should honor a requestor's desire to keep confidential any OLC advice that the proposed executive action would be unlawful, where the requestor then does not take the action.  For OLC routinely to release the details of all contemplated action of dubious legality might deter executive branch actors from seeking OLC advice at sufficiently early stages in policy formation.

*Principles to Guide the Office of Legal Counsel*, 81 Ind. L.J. 1348, 1352 (2006) (cited in Compl. at ¶ 22).[11]  Based on these considerations typical to the attorney-client relationship, it would clearly be permissible for OLC to decide not to publish every one of its opinions.

Indeed, several courts have previously recognized that OLC may legitimately withhold its opinions on the basis of the attorney-client privilege.  *See, e.g.*, *Nat'l Sec. Counselors v. CIA*, ---

---

[11] Notwithstanding its title, this law review article presents private opinions and is not an official OLC document.

F.Supp.2d ----, 2013 WL 4111616 at *73 (D.D.C. Aug. 15, 2013) ("[T]he Court concludes that the attorney-client privilege does apply to the sixteen OLC opinions because they 'embody legal advice that was provided in confidence at the request of and to Executive Branch officials.'" (quoting Colborn Decl.)); *ACLU v. Dep't of Justice*, 2011 WL 10657342 at *9 (D.D.C. Feb. 14, 2011); *CREW v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d 146, 166 (D.D.C. 2008); *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 511 F. Supp. 2d 56, 69 (D.D.C. 2007).   These decisions (including one involving CREW as a plaintiff) provide ample support for the soundness of OLC's alleged decision not to publish all of its opinions.

As for the deliberative process privilege, there can similarly be little debate that OLC opinions generally fall within the privilege.   The deliberative process privilege applies when material is both "predecisional" and "deliberative." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).   The purpose of the privilege is to "prevent injury to the quality of agency decisions." *Sears*, 421 U.S. at 151.   Because "the frank discussion of legal or policy matters in writing might be inhibited if the discussion were made public," the privilege "focus[es] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* at 150 (internal quotation marks omitted).

OLC opinions generally meet these requirements.   As discussed above, OLC itself does not make policy decisions; instead it provides legal advice for other agencies, who then make policy decisions within the legal framework articulated by OLC.   Accordingly, OLC's advice is ordinarily part of its client agencies' ongoing deliberations about how to conduct or implement their policy goals. *See Elec. Frontier Found. v. Dep't of Justice*, 892 F. Supp. 2d 95, 103 (D.D.C. 2012) ("OLC prepared the memorandum at issue, which expresses legal opinions and makes

recommendations based thereon, to assist the FBI in arriving at its policy decision.");[12] *Elec. Privacy Info. Ctr.*, 584 F. Supp. 2d at 77 n.19 ("[A] legal conclusion that is part of a larger decision-making process may well be subject to the deliberative process privilege.").  In general, then, OLC opinions are critical aspects of the "process by which governmental decisions and policies are formulated," *Sears*, 421 U.S. at 150, and the public disclosure of these opinions would undoubtedly chill the "candid, independent, and principled advice" that OLC aims to provide.  Best Practices Memo at 1; *cf. Elec. Frontier Found.*, 892 F. Supp. 2d at 103 ("Indeed, it is not hard to imagine how disclosure of the OLC Opinion would likely interfere with the candor necessary for open discussions on the FBI's preferred course of action regarding the OIG evaluation.").

Again, there is ample caselaw confirming that OLC opinions are generally protected by the deliberative process privilege.  *See, e.g.*, *Elec. Frontier Found.*, 892 F. Supp. 2d at 102-03; *New York Times v. Dep't of Justice*, 2013 WL 174222 at *4-9 (S.D.N.Y. Jan. 7, 2013); *CREW v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d 146, 166 (D.D.C. 2008); *CREW v. Office of Admin.*, 249 F.R.D. 1, 4-8 (D.D.C. 2008); *New York Times Co. v. Dep't of Def.*, 499 F. Supp. 2d 501, 516 (S.D.N.Y. 2007); *Southam News v. INS*, 674 F. Supp. 881, 886 (D.D.C. 1987); *Morrison v. Dep't of Justice*, 1988 WL 47662 at *1-2 (D.D.C. Apr. 29, 1988).  These cases, some of which again involve CREW as a plaintiff, confirm that OLC's legal advice is generally deliberative in nature.

In light of this significant amount of caselaw holding that OLC's legal advice is privileged and thus exempt from disclosure, CREW cannot plausibly maintain that it is arbitrary and capricious for OLC to refuse to publish all of its opinions.  Indeed, CREW is collaterally

---

[12] This case is currently on appeal in the D.C. Circuit, docket number 12-5363.  Briefing has been completed and oral argument is currently scheduled for November 26, 2013.

estopped from arguing that *none* of OLC's opinions are privileged, which is by itself sufficient to uphold OLC's alleged policy.[13]  As confirmed by the overwhelming volume of caselaw holding that specific OLC opinions are exempt from disclosure, it is eminently rational for OLC not to automatically publish all of its legal opinions.  CREW's Complaint must therefore be dismissed for failure to state a claim upon which relief can be granted.

### C. OLC Does Not Create Secret Law, Nor Should Its Role Within the Executive Branch Diminish Its Ability to Invoke Applicable Privileges.

CREW's Complaint repeatedly describes OLC opinions as "secret law," and implies that the alleged "binding" nature of OLC's legal advice requires that the advice be disclosed.  *See, e.g.*, Compl. ¶ 31 ("OLC's practice of withholding from the public an unknown number of opinions it has rendered, including opinions on important topics of significant public interest, has resulted in the creation of a body of secret law that binds the executive branch.").  OLC does not create "secret law," however, nor does the nature of OLC's legal advice require it to be disclosed. The caselaw does not support either assertion, and the relevant privileges should not be construed in a manner that would undermine OLC's important role of providing confidential legal advice to the Executive Branch.

First, contrary to CREW's allegations, OLC does not create "secret law."  In the FOIA context, the phrase "secret law" is a term of art, sometimes also referred to as "working law." The "secret law" doctrine is a narrow one, under which agencies are prohibited from withholding

---

[13] All three requirements for issue preclusion were met in both of the cases cited above involving CREW as a plaintiff—*CREW v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d 146, 166 (D.D.C. 2008), and *CREW v. Office of Admin.*, 249 F.R.D. 1, 4-8 (D.D.C. 2008).  In each case, the court resolved the issue presented here (the privileged nature of OLC's legal advice); that issue was necessary for the court's judgment; and there is no unfairness in holding CREW accountable for the court's determination.  *See generally Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (discussing the three requirements for "establishing the preclusive effect of a prior holding).

decisional or post-decisional documents that govern the substantive rights or liabilities of private citizens:

> [W]e recognize that there is a narrow definition of "working law" that limits the term to those policies or rules, and the interpretations thereof, that either create or determine the extent of the substantive rights and liabilities of a person.  This appears to be the definition understood by all the sources relied upon by the Supreme Court in *Sears* for the proposition that "working law" is not protected by exemption 5.  All of the sources apparently operate under the assumption that the reason "working law" should be disclosed is that a private party may have cause to rely on it.

*Afshar v. Dep't of State*, 702 F.2d 1125, 1141 (D.C. Cir. 1983) (internal quotation marks and citations omitted).  Here, of course, OLC opinions do not regulate the public.  OLC simply provides legal advice to agencies, which then may (or may not) regulate the public.  Regardless of whether those agencies' rationales must be disclosed as working law, OLC's legal advice itself is not the working law of any agency.  The "secret law" doctrine thus has no applicability to this case.  *See CREW v. Office of Admin.*, 249 F.R.D. at 6-8 (rejecting the "secret law" argument).[14]

Second, CREW's Complaint implies that the "binding" nature of OLC's advice requires that the advice be disclosed.  *See* Compl. ¶¶ 13-34.  But this argument is contradicted by

---

[14] The Second Circuit has adopted a broader view of the "working law" doctrine, including in a prior case involving an OLC opinion.  *See Brennan Ctr.*, 697 F.3d at 196-98.  The discussion of "working law" in that case is obviously not binding on this Court, particularly because it was *dicta* even within that case, and also because it conflicts with the D.C. Circuit's views as set forth in *Afshar*.  The Second Circuit's analysis is also incorrect on the merits:  it ignores the requirement that "working law" affect private parties, and incorrectly states that a pre-decisional document may become "working law" if it provides the basis for an agency's ultimate decision.  *Id.* at 199-200.  The Supreme Court has made clear, however, that "working law" does not provide a basis for disclosure of pre-decisional communications.  *See Sears*, 421 U.S. at 151 (discussing how it is "difficult to see how the quality of the decision will be affected by forced disclosure of such [post-decisional] communications, *as long as prior communications and the ingredients of the decisionmaking process are not disclosed*" (emphasis added)).  The sole manner in which pre-decisional documents may lose their Exemption 5 protection is if the agency expressly adopts or incorporates a pre-decisional document into its final decision.  *See id.* at 161.  The "working law" doctrine thus has no applicability to pre-decisional advice documents, such as OLC opinions.

governing precedent, which has not only specifically recognized OLC's ability to withhold its opinions as privileged, *see* Section IV.B.2, but has also generally recognized that confidential legal advice is properly withheld as deliberative.  *See, e.g.*, *Elec. Privacy Info. Ctr.*, 584 F. Supp. 2d at 75 ("The D.C. Circuit has long recognized that legal advice is an integral part of the decision-making process and is protected by the deliberative process privilege." (citing *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980), and *Coastal States Gas Corp.*, 617 F.2d at 868)); *see also Murphy v. Dep't of Army*, 613 F.2d 1151, 1154 (D.C. Cir. 1979) (holding that the provision of legal advice to a person with "decision-making power" is "a classic case of the deliberative process at work").  Just as in *Brinton*, *Coastal States*, and *Murphy*, the legal advice provided by OLC aids the recipient agencies in their decisionmaking processes, and thus the advice is protected as privileged.

Of course, in providing the legal framework that shapes and possibly limits a client agencies' range of legally available policy options, OLC's advice may constrain client agencies, at least as a matter of custom and practice.  But that fact does not affect the advice's privileged nature.  For one thing, many agencies receive similarly "binding" legal advice from their in-house general counsels or chief counsels.[15]  Thus, the "binding" nature of OLC's legal advice can hardly be described as unique within Executive Branch attorney-client relationships.

Moreover, a proper construction of the relevant privileges—and in particular the deliberative process privilege, which is a uniquely governmental privilege—must account for the Executive Branch's need to designate a single office as responsible for conclusively resolving

---

[15]  In many cases, individual agencies' general counsels or chief counsels will provide "binding" legal advice, in the sense that their legal opinions are customarily followed within the agency.  In some cases, moreover, the general counsels' or chief counsels' legal advice may even be formally controlling.  *See, e.g.*, 49 C.F.R. § 1.26 (Department of Transportation regulation stating that "[t]he General Counsel is the chief legal officer of the Department, legal advisor to the Secretary, and final authority within the Department on questions of law").

difficult (and sometimes disputed) legal questions.  As prior Attorneys General and former OLC officials have recognized, the Department of Justice's advice-giving function—with that advice generally being treated as authoritative throughout the Executive Branch—is necessary for the government's orderly administration:

> Although the [Judiciary Act of 1789], requiring this [advice-giving] duty of the Attorney General, does not expressly declare what effect shall be given to his opinion, yet the general practice of the Government has been to follow it;—partly for the reason already suggested, that an officer going against it would be subject to the imputation of disregarding the law as officially pronounced, and partly from the great advantage, and almost necessity, of acting according to uniform rules of law in the management of the public business: a result only attainable under the guidance of a single department of assumed special qualifications and official authority.

*Office and Duties of Attorney General*, 6 Op. Att'y Gen. 326, 334 (1854); *see also Opinions of Attorneys General and Decisions of Auditors*, 5 Op. Att'y Gen. 97, 97 (1849); Moss, *Executive Branch Legal Interpretation*, 52 Admin. L. Rev. at 1309-11.  Even the law review article cited in CREW's Complaint, the *Principles to Guide the Office of Legal Counsel*, recognizes the important rule-of-law values served by consolidating the Executive's advice-giving function within a single office in the Department of Justice:

> From the Washington Administration through the present, Attorneys General, and in recent decades the Office of Legal Counsel, have served as the source of legal determinations regarding the executive's legal obligations and authorities.  The resulting body of law . . . offers powerful testimony to the importance of the rule-of-law values that President Washington sought to secure and to the Department of Justice's profound tradition of respect for the rule of law.  Administrations of both political parties have maintained this tradition, which reflects a dedication to the rule of law that is as significant and as important to the country as that shown by our courts.

81 Ind. L.J. at 1349.  Indeed, the consolidation of this function within a single office allows that office to create the norms and traditions that prior OLC officials have argued are critical to OLC's functioning.  *See id.* ("OLC's tradition of principled legal analysis and adherence to the rule of law thus is constitutionally grounded and also best serves the interests of both the public

and the presidency[.]"); *id.* at 1352-53 (discussing the "internal systems and practices" that OLC should maintain "to help ensure that OLC's legal advice is of the highest possible quality").

Accordingly, the mere fact that OLC provides authoritative legal advice for the Executive Branch—or that OLC may approach its advice-giving function in a somewhat different way than private lawyers would—is an insufficient basis to prevent OLC from invoking the relevant privileges.  Congress has intended, since 1789, that the Attorney General (and, by extension, OLC) provide objective, authoritative legal advice to the rest of the Executive Branch.  *See* Moss, *Executive Branch Legal Interpretation*, 52 Admin. L. Rev. at 1306-16.  Construing FOIA as CREW proposes—to require the automatic disclosure of all OLC opinions—would undoubtedly undermine this long-settled and important role for OLC and the Department of Justice in our nation's government.

### D.     CREW's Argument Raises Significant Constitutional Concerns About the Executive Branch's Ability to Obtain Confidential Legal Advice.

CREW's argument that all OLC opinions must be publicly disclosed would have far-reaching implications.  Not only would this argument damage OLC's effectiveness as an institution, it would also call into question the ability of the Executive Branch and senior Executive Branch officials to obtain *any* confidential legal advice.  CREW's argument thus raises significant constitutional concerns, and should be rejected on this basis alone.

CREW's argument and its accompanying prayer for relief—seeking a judicial order compelling the public disclosure of all "binding" OLC opinions, Compl. ¶ 42—is not only incorrect as a matter of law and unwise as a policy matter, *see* Section IV.C, but would also significantly interfere with the President's constitutional duties under Article II.  Specifically, the Constitution requires that the President take an Oath promising to "faithfully execute the Office of President of the United States," and to "preserve, protect and defend the Constitution of the

United States."  U.S. Const. art. II, § 1.  The Constitution further requires the President to "take Care that the Laws be faithfully executed[.]"  US. Const. art. II, § 3.  In connection with those duties, the President is authorized to "require the Opinion, in writing, of the principal Officer in each of the executive Departments, upon any Subject relating to the Duties of their respective Offices."  U.S. Const. art. II, § 2.

Courts, commentators, and government officials have all recognized that, for a President to effectively execute his duties under Article II, he must be able to obtain confidential and candid legal advice.  *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 705-06 (1974) (discussing the President's need for confidentiality "in the exercise of Art. II powers," noting that "the importance of this confidentiality is too plain to require further discussion"); *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 909 (D.C. Cir. 1993) ("The ability to discuss matters confidentially is surely an important condition to the exercise of executive power. Without it, the President's performance of any of his duties—textually explicit or implicit in Article II's grant of executive power—would be made more difficult."); *Principles to Guide the Office of Legal Counsel*, 81 Ind. L.J. at 1348-49 ("From the outset of our constitutional system, Presidents have recognized that compliance with their constitutional obligation to act lawfully requires a reliable source of legal advice."); Letter from Att'y Gen. Mukasey to Sen. Maj. Leader Reid, Re: The OLC Reporting Act of 2008 (Nov. 14 2008) at 3-4 (discussing how "[a]dministrations of both political parties have long recognized the importance of protecting the Executive branch's confidential legal advice" and citing examples).[16]

Indeed, this very Court has previously recognized that, pursuant to Article II, the President must have the authority to obtain confidential advice:

---

[16] This letter is available online at http://www.justice.gov/archive/ola/views-letters/110-2/11-14-08-ag-ltr-re-s3501-olc-reporting-act.pdf, and also on Westlaw at 2008 WL 5533799.

> The constitutional authority at stake here is the President's ability to receive advice that has been generated in confidence.  While no clause of Article II expressly grants the President the power to acquire information or receive advice in confidence, the necessity of receiving confidential advice appears to flow from Article II.  Several clauses of Article II reflect an understanding that the President will have access to information and the power to acquire it, and the Supreme Court has repeatedly recognized that the importance to the Presidency of receiving candid, honest, and when necessary, unpopular, advice from high Government officials and those who advise and assist them in the performance of their manifold duties is paramount.

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 50-51 (D.D.C. 2002) (Sullivan, J.) (internal quotation marks omitted).

Plainly, CREW's requested relief here—the mandatory disclosure of all "binding" OLC opinions—would, if granted, significantly interfere with the President's ability to receive confidential legal advice.[17]  Not only would it prevent the President himself from receiving such advice—thus interfering with his authority under the Opinions Clause, in addition to the execution of his Article II duties—but CREW's relief would also interfere with the President's discharge of his constitutional obligation to take care that agencies faithfully execute the laws, including by ensuring that those agencies may receive confidential legal advice directly. Construing FOIA to permit CREW to obtain this relief would clearly raise significant Constitutional concerns.  *Cf. Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 488-89 (1989) (Kennedy, J., concurring) (concluding that the Federal Advisory Committee Act was unconstitutional as applied, because "[t]he mere fact that FACA would regulate so as to interfere with the manner in which the President obtains information necessary to discharge his duty assigned under the Constitution to nominate federal judges is enough to invalidate the Act").

---

[17] The President's need to receive confidential legal advice raises yet another privilege, the presidential communications privilege, that would protect a substantial portion of OLC's advice from disclosure.  *See* note 10, *supra*.

Even apart from OLC opinions, moreover, accepting CREW's argument here would call into question Executive Branch policymakers' ability to obtain *any* confidential legal advice, regardless of whether the advice came from OLC or from within an agency. *See* note 15 & accompanying text, *supra*. The damage to the Executive Branch caused by such a holding—essentially eliminating the government's ability to protect "binding" legal advice under the deliberative process and/or attorney-client privileges—can scarcely be overstated. *Cf.* Letter from Mukasey to Reid at 4 ("[L]egal matters are likely to be among those on which high government officials most need, and should be encouraged to seek, objective, expert advice. . . . Any other approach would jeopardize not just particular policies and programs but the principle that the government must obey the law.").

In sum, OLC's advice-giving function is important not only as a policy matter, but also for the President's effective execution of his constitutional duties and responsibilities pursuant to Article II. CREW's arguments here are plainly in tension with the Executive's ability to obtain confidential legal advice. These significant Constitutional concerns, by themselves, warrant dismissal of the extraordinary legal claim presented in CREW's Complaint.

## CONCLUSION

For the foregoing reasons, CREW's Complaint should be dismissed for lack of subject-matter jurisdiction, or in the alternative for failure to state a claim upon which relief can be granted.

Dated: November 13, 2013                    Respectfully Submitted,

                                            STUART F. DELERY
                                            Assistant Attorney General

                                            RONALD C. MACHEN JR.
                                            United States Attorney

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/   Daniel Schwei*
DANIEL SCHWEI
Trial Attorney (N.Y. Bar)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC 20530
Tel.:        (202) 305-8693
Fax:        (202) 616-8470
Email:      daniel.s.schwei@usdoj.gov

Mailing Address:
Post Office Box 883
Washington, D.C. 20044

Courier Address:
20 Massachusetts Avenue N.W.
Washington, D.C. 20001

*Counsel for Defendants*