<div align="center">

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

</div>

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1291 (EGS) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<div align="center">

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

</div>

This lawsuit seeks to compel defendants U.S. Department of Justice (DOJ), its component, the Office of Legal Counsel (OLC), Assistant Attorney General Virginia A. Seitz (the head of OLC), and Attorney General Eric Holder[1] to comply with their mandatory statutory obligations to make publicly available two categories of records:  (1) final OLC opinions, and (2) unpublished statements of policy and interpretations issued by OLC and adopted by the relevant agency.  5 U.S.C. §§ 552(a)(2)(A) & (B)  (referred to herein as (a)(2)).  The (a)(2) provision of the Freedom of Information Act (FOIA) predates, and is separate from, the FOIA's provisions requiring disclosure upon request for specified documents.  Instead, under (a)(2) an agency must make certain categories of records publicly available whether or not it receives a specific request for some or all of those records.

Defendants have now moved to dismiss this lawsuit under Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure, raising an array of procedural and substantive challenges.

---

[1] Collectively referred to herein as DOJ or the government.

DOJ argues CREW lacks standing to sue and judicial review of its claims is otherwise precluded because the FOIA provides an alternative, fully adequate remedy.  DOJ also claims CREW's complaint fails to state a claim upon which relief can be granted.

On all fronts, DOJ's  motion rests on a gross distortion of this lawsuit and the relief it seeks, and a fundamental misconstruction of governing law.  While DOJ characterizes CREW's lawsuit as "extraordinary," it is, in fact, the government's position that it need not comply with a statutory command that warrants that description.  Further, DOJ seeks to sidestep the normal burdens of proof by couching its motion as premised on law, when in reality it relies on unsupported and incomplete factual assertions that are very much in dispute.  At root, DOJ's motion is little more than smoke and mirrors in an attempt to conceal the defendants' failure to comply with their mandatory (a)(2) obligations.

## STATUTORY AND REGULATORY BACKGROUND

### *The Freedom Of Information Act*

The FOIA imposes a number of affirmative disclosure obligations on executive branch agencies that apply irrespective of whether those agencies have received specific, individual requests for documents.  These include the obligation to "make available for public inspection and copying" a number of categories of records including, *inter alia*,

> (A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases; [and]
>
> (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register . . .

5 U.S.C. §§ 552(a)(2)(A) and (B).

Congress originally enacted this provision as section 3 of the Administrative Procedure

2

Act (APA), which took effect on September 11, 1946.[2]  As originally written, section 3(a) directed each agency to publish in the Federal Register three categories of material, including organizational, procedural, and substantive rules.  *Id.*  As relevant here, under section 3(a)(3) of the APA, each agency was required to publish "substantive rules adopted as authorized by law and statements of general policy or interpretations formulated and adopted by the agency for the guidance of the public."  The 1947 Attorney General's Manual describes the phrase "substantive rules adopted as authorized by law" as referring to "rules issued by an agency to implement statutory policy," and clarifies that "[s]tatements of general policy and interpretations need be published only if they are formulated and adopted by the agency for the guidance of the public."  1947 AG Manual.

Further, section 3(b) of the APA directed agencies to make publicly available "all final opinions or orders in the adjudication of cases (except those required for good cause to be held confidential and not cited as precedents)."  These two provisions were known as "the public information section" and were

> drawn upon the theory that administrative operations and
> procedures are public property which the general public, rather
> than a few specialists or lobbyists, is entitled to know or have
> ready means of knowing with definiteness and assurance.

H. Rep. No. 89-1497 (1966) (quotation omitted).

In 1965, a provision was introduced to address the numerous "loopholes which allow agencies to deny legitimate information to the public."  S. Rep. No. 89-913, at 38 (1965).  The

---

[2] Attorney General's Manual on the Administrative Procedure Act, Section 3 – Public Information (1947) (1947 AG Manual), citing 92nd Cong. Rec. 5650 (Sen. Doc. p. 357), *available at* http://www.law.fsu.edu/library/admin/1947ii.html.

1965 proposed amendments were designed to "establish a general philosophy of full agency

disclosure unless information is exempted under clearly delineated statutory language."  *Id.*

One year later, Congress amended section 3 of the APA, now included as part of the

FOIA, to require all agencies to make publicly available, *inter alia*, "all final opinions . . . and all

orders made in the adjudication of cases" and "those statements of policy and interpretations

which have been adopted by the agency."  Pub. L. 89-487, Section 3(b).  The legislative history

to this provision explains these changes were designed to reconcile perceived conflicts between

the public's need to know and the need to protect individual privacy.  The legislative solution

> would require agencies to make available statements of policy,
> interpretations, staff manuals, and instructions that affect any
> member of the public.  This material is the end product of
> Federal administration.  It has the force and effect of law in most
> cases, yet under the present statute these Federal agency
> decisions have been kept secret from the member of the public
> affected by the decisions.
>
> As the Federal Government has extended its activities to
> solve the Nation's expanding problems – and particularly
> in the 20 years since the Administrative Procedure Act was
> established – the bureaucracy has developed its own form
> of case law.  This law is embodied in thousands of orders,
> opinions, statements, and instructions issued by hundreds
> of agencies.  This is the material which would be made
> available under [the proposed bill].

H. Rep. No. 89-1497, at 28 (1966).[3]

As currently codified at 5 U.S.C. § 552(a)(2), the statute now requires every agency to

make publicly available "(A) final opinions . . . . made in the adjudication of cases" and "(B)

---

[3] Congress further amended § 552(a)(2) of the FOIA in 1996 to add two additional
categories agencies are required to make publicly available:  records released to any person
under § 552(a)(3) that are likely to become the subject of subsequent requests and a general
index of records referred to in subsection D.  Pub. L. No. 90-23, §§ 552(a)(2)(D) & (E).

those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register."  5 U.S.C. §§ 552(a0(2)(A) & (B).

*The Office of Legal Counsel*

The Judiciary Act of 1789 charged the attorney general with, *inter alia*,

> giv[ing] his advice and opinion upon questions of law when required by the President of the United States, or when requested by the heads of any of the departments, touching any matters that may concern their departments[.]

Judiciary Act of 1789, ch. 20, § 35, 1 Stat. 73, 93.  The current codification of this law, found at 28 U.S.C. § 523, directs the attorney general to render opinions when requested by the president or heads of executive departments "on questions of law arising in the administration of his department."  Pursuant to 28 U.S.C. § 510, the attorney general has delegated this responsibility to OLC.

In addition, the president by executive order has directed agency heads to submit inter-agency disputes to the attorney general "[w]henever two or more Executive agencies are unable to resolve a legal dispute between them[.]"  Exec. Order No. 12, 146, § 1-501, 3 C.F.R. § 409 (1979), reprinted as amended in 28 U.S.C. § 508 (1988).  This authority has been exercised by various DOJ components over the years.  In 1933, the Independent Offices Appropriation Act, Pub. L. No. 73-78, § 16(a), 48 Stat. 283, 307 (June 16, 1933), created within DOJ a new office of the assistant solicitor general to which the attorney general delegated the responsibility of drafting legal opinions and providing legal advice to other executive branch agencies.  This office was abolished through the  Reorganization Plan No. 2 of 1950, 64 Stat. 1261, and replaced with the Executive Adjudications Division.  In 1953, the attorney general renamed it the Office of Legal Counsel.  Att'y Gen. Order No. 9-53 (Apr. 3, 1953).

Current DOJ regulations define the function of OLC as including the preparation of "the formal opinions of the Attorney General," 28 C.F.R. § 0.25(a), and "rendering opinions to the Attorney General and to the heads of the various organizational units of the Department on questions of law arising in the administration of the Department." *Id.* at § 0.25(c).

## FACTUAL BACKGROUND

Plaintiff CREW is a non-profit, non-partisan corporation organized under § 501(c)(3) of the Internal Revenue Code. Complaint, ¶ 4. CREW is committed to protecting the rights of citizens to be informed about the activities of government officials including what the executive branch considers to be binding law, ensuring the integrity of government officials and their actions, and protecting our political system against corruption and deceit. *Id.* To advance its mission, CREW uses a combination of research, litigation, advocacy, and public education to disseminate information to the public about government officials and their actions. *Id.,* ¶ 5. As part of this effort, CREW uses government records made available to it under the FOIA, as well as government records agencies have otherwise made available for inspection and copying. *Id.*

CREW has an established history of seeking legal opinions issued by OLC under the FOIA. These opinions are useful in explaining the rationale for controversial decisions DOJ and other agencies have made, including decisions CREW has challenged in litigation. Complaint, ¶ 6. Currently, CREW has FOIA requests pending with the OLC for certain of its opinions and plans to file future FOIA requests for additional legal opinions issued by OLC on a range of controversial issues of public importance. *Id.*, ¶ 7. In addition, CREW has submitted an *amicus* brief in litigation before the U.S. Court of Appeals for the D.C. Circuit in a case seeking public access to an OLC opinion setting forth its definitive interpretation of the scope of the FBI's

authority under federal surveillance laws.  *Id.*, ¶ 6.

Beyond these FOIA requests seeking specific OLC opinions, CREW has requested by letter to OLC Assistant Attorney General Seitz dated July 3, 2013, that OLC make available for public inspection and copying pursuant to 5 U.S.C. § 552(a)(2) all OLC opinions that bind the executive branch.  *Id.,* ¶ 32.  Following the submission of its letter, CREW and others requested a meeting with Assistant Attorney General Seitz to discuss the release of OLC opinions.  *Id.*, ¶ 34.  To date, no one in OLC has responded to this request.  *Id.*  On August 20, 2013, Deputy Assistant Attorney General John E. Bies responded to CREW's letter, characterizing OLC opinions as confidential, pre-decisional legal advice protected by privilege and therefore constituting neither final opinions nor statements of policy and interpretations within the meaning of 5 U.S.C. §§ 552(a)(2)(A) & (B).  Complaint, ¶ 33.  Accordingly, on August 27, 2013, CREW filed the complaint in this matter under the APA and the FOIA.  Complaint, ¶ 1 (Dkt. 1).

## ARGUMENT

### I.   STANDARD OF REVIEW.

In responding to a motion brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a plaintiff bears the burden of establishing the court's jurisdiction.  *See*, *e.g.*, *A.N.S.W.E.R. Coalition v. Salazar*, 2013 U.S. Dist. LEXIS 5066, *12 (D.D.C. Jan. 14, 2013), and cases cited therein.  The burden at the pleading stage "is not onerous," *id.* (quoting *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 12 (D.C. Cir. 2011)), and a plaintiff need allege only "general factual allegations of injury resulting from the defendant's conduct."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Am. Soc'y for the Prevention of*

*Cruelty to Animals v. Feld Entertainment, Inc.*, 659 F.3d 13, 19 (D.C. Cir. 2011).

The reviewing court must accept all factual allegations in the complaint as true, giving the plaintiff "the benefit of all favorable inferences that can be drawn from the alleged facts." *CREW v. Cheney*, 593 F. Supp. 2d 194, 209-10 (D.D.C. 2009) (citing *Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993)). Further, in resolving a motion to dismiss on standing grounds, the reviewing court "presum[es] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 889 (1990)).

In ruling on a motion to dismiss brought under Rule 12(b)(6) for failure to state a claim, the reviewing court also must construe the complaint "in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *CREW v. Cheney*, 593 F. Supp. 2d at 210 (citation omitted). The court may consider only those facts alleged in the complaint, including documents attached to or incorporated in the complaint, as well as matters of public record and those of which the court may take judicial notice. *See, e.g.*, *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## II.   DOJ'S PROCEDURAL OBJECTIONS MISSTATE THE CLAIM CREW IS MAKING AND ARE WITHOUT MERIT.

### A.   CREW Has Standing To Assert The Claim DOJ Is Violating The Mandatory Disclosure Requirement Of (a)(2).

To invoke the Court's jurisdiction under Article III of the Constitution, a plaintiff must demonstrate as an "irreducible constitutional minimum," *Lujan*, 504 U.S. at 560, an injury in fact "fairly traceable" to the challenged act and "likely to be redressed by the requested relief." *Allen*

*v. Wright*, 468 U.S. 737, 751 (1984).  Here DOJ has challenged CREW's standing by claiming

CREW has failed to establish both that it is challenging "a specific policy actually being

implemented by OLC," Memorandum in Support of Defendants' Motion to Dismiss (Ds' Mem.)

at 8, and that plaintiff faces "a likelihood of being subject to the purported policy in the future."

*Id.* at 9.

Not only is this inaccurate, but DOJ appears to fundamentally misunderstand CREW's

cause of action.  As the complaint makes clear, CREW is challenging as contrary to law,

specifically (a)(2) of the FOIA, OLC's failure to:

> make available to the public opinions of the Office of Legal Counsel
> . . . on questions of law, which constitute unpublished statements of
> policy and interpretation that have been adopted by the executive
> branch, and final opinions made by OLC in the adjudication of
> disputes involving executive branch agencies.

Complaint, ¶ 1.  CREW alleges further OLC renders legal opinions pursuant to statutory

authority delegated to it by the attorney general that  – as a class of documents – fall within the

categories of documents for which (a)(2) imposes on OLC an affirmative obligation to make

publicly available, whether or not OLC receives a request under the FOIA for any particular

document.  *See*, *e.g.*, Complaint at ¶ 37.  For purposes of determining CREW's standing in

response to a Rule 12(b)(1) motion to dismiss, this Court must accept these allegations as true

and assess them based on the claims and factual assertions CREW has made, not the ones made

by DOJ.

Nevertheless DOJ is asking this Court to do just the opposite – ignore CREW's  well-

pleaded complaint and determine, as a factual matter, that OLC opinions do not fall within the

categories (a)(2) embraces.  To buttress its argument, DOJ reframes CREW's claims as

challenging a "policy," then attempts to refute the existence of such a "policy," and suggests

with such a claim CREW has a higher burden of establishing its standing. Ds' Mem. at 7-8. The

word "policy," however, does not appear in the complaint. Instead, CREW challenges:

> OLC's *practice* of withholding from the public an unknown
> number of opinions it has rendered, including opinions on
> important topics of significant public interest, [which] has
> resulted in the creation of a body of secret law that binds
> the executive branch.

 Complaint, ¶ 31 (emphasis added).  As a practice, OLC has refused and continues to refuse to

make OLC opinions publicly available, contrary to (a)(2).  Further, as pled in the complaint, this

practice is "arbitrary, capricious, and contrary to law."  *Id.*, ¶ 1.

Moreover, the evidence currently before the Court directly contradicts the factual

conclusions the government asks this Court to make to find CREW lacks standing to sue.

Defendants point to the letter from OLC Deputy Assistant Attorney General John Bies (Bies

Letter) (Dkt. 8-3) as evidence "OLC does not have a blanket policy with respect to its opinions."

Ds' Mem. at 8.  To the contrary, the Bies Letter supports, not refutes, CREW's allegations.  Mr.

Bies states unequivocally OLC "make[s] an individualized, case-by-case determination with

respect to whether each opinion of [OLC] is appropriate for publication."  Bies Letter at 1.  It

necessarily follows from this that, as CREW has alleged, OLC does not categorically treat its

opinions as subject to the mandatory requirements of (a)(2), believing instead it has the

discretion to determine on a "case-by-case" basis whether it will disclose specific opinions.  *See*

*also* Bies Letter at 2 (OLC opinions are "exempt from mandatory disclosure under the FOIA.").

This is the very essence of what CREW is challenging here – an "individualized public decision

process," Bies Letter at 1 – that ignores OLC's statutory obligations under (a)(2) of the FOIA.

While miscast as a question of standing based on a claim CREW has not made, the government at bottom is attacking the facts that underlay CREW's theory of liability. Such an attack, however, is appropriately made through a future summary judgment motion based on a fully developed factual record, not a motion to dismiss for lack of standing. *Haase v. Sessions*, 835 F.2d 906, 907 (D.C. Cir. 1987) (at the Rule 12(b)(1) stage "the plaintiff is protected from an evidentiary attack on his asserted theory by the defendant.").

Even weaker is DOJ's argument CREW has not established the likelihood of being subject to the challenged practice of OLC. In support, DOJ points to what it characterizes as the "some day" intentions of CREW to file FOIA requests for OLC opinions in the future, Ds' Mem. at 9, ignoring the totality of the facts pled here.

As set forth in the complaint, CREW has a longstanding interest in obtaining final OLC opinions that "explain the rationale for controversial decisions DOJ and other agencies have made." Complaint, ¶ 6. Not only has CREW filed FOIA requests for these documents in the past, *id.*, but most significantly it has pending FOIA requests for OLC opinions, and plans to seek further OLC opinions in the future. Id., ¶ 7. None of these requested opinions has been made public by OLC, either under (a)(2) of the FOIA or FOIA's other disclosure provisions. Because these documents are central to CREW "in carrying out is core programmatic activities," *id.*, ¶ 8, CREW has been harmed directly by the challenged OLC conduct and practices.

Notwithstanding this evidence of CREW's harm, DOJ insists CREW has alleged merely "some day intentions" that fall short of establishing an actual or imminent injury. Ds' Mem. at 9. In support, the government cites *Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 93-94 (D.D.C. 2013). But this case actually supports CREW's position as it hold the prerequisites for

standing are satisfied where, as here, a plaintiff has alleged both an intent to file requests in the future *and has a pending request*.[4]

Finally, DOJ relegates to a footnote the argument CREW lacks standing because its allegations regarding its previously filed FOIA requests do not establish "it was *ever* subjected to OLC's alleged policy." Ds' Mem. at 9 n.2 (emphasis in original). This is nothing short of absurd. Had OLC complied with its obligations under (a)(2) of the FOIA, CREW would not have needed to file individual FOIA requests. Nor is it sufficient that CREW could litigate individual withholdings under the FOIA. The separate (a)(2) provision at issue guarantees to CREW, and all members of the public, a continuing right of access that does not require an individual FOIA request or the initiation of an individual FOIA lawsuit. And even if CREW prevailed on an individual FOIA lawsuit, forcing the disclosure of the specifically requested opinion, it would afford no relief on the claim here that *all* OLC opinions meeting the criteria of (a)(2) of the FOIA must be made publicly available on an ongoing and continual basis.

> **B. Because CREW's Claim Is Not A Standard Denial Or Specific Request Claim, But One Seeking Compliance With An Independent And Mandatory Duty Under Section (a)(2), It Is Not Precluded By §§ 552(a)(3) And 4 Of The FOIA.**

The government's gross mischaracterization of this lawsuit extends to its assertion the APA does not permit judicial review of CREW's claim. Relying on the principle that the APA provides for judicial review only where no other adequate judicial remedy exists, DOJ argues

---

[4] Those cited cases include two brought by CREW, *CREW v. SEC*, 858 F. Supp. 2d 51, 60 (D.D.C. 2012), and *CREW v. Executive Office of the President*, 587 F. Supp. 2d 48, 61 (D.D.C. 20008), in which the defendant agencies were represented by the same DOJ office representing the defendants here. Given DOJ's familiarity with those cases, its inaccurate citation is perplexing.

CREW has a full and adequate remedy through the FOIA's provisions for requesting specific documents.  Ds' Mem. at 10.  But this argument ignores the true nature of CREW's claim, the affirmative mandatory disclosure requirement of (a)(2) on which CREW relies, and the specific relief CREW seeks.

As discussed, this decidedly is not a routine FOIA lawsuit founded on a specific FOIA request for a specific set of documents the agency refused to produce.  Rather, CREW's lawsuit is based on the refusal of defendants to comply with their affirmative obligation – untethered to any specific document request – to make publicly available pursuant to (a)(2) of the FOIA two categories of records OLC produces.

DOJ nevertheless insists CREW could obtain "the same ultimate relief it seeks in this lawsuit" by filing an individual FOIA request with the agency.  Ds' Mem. at 11.  But this ignores a crucial difference between a lawsuit brought to enforce an agency's obligations under § 552(a)(3) of the FOIA and one, like the present case, brought to enforce obligations under § 552(a)(2).  In the first instance, any relief obtained would be directed to fulfilling a specific request for records, while relief obtained in cases like this one sweeps more broadly to require disclosure of an entire category of records on an ongoing basis, whether or not they have been specifically requested.

Nor is DOJ's argument strengthened by its litany of citations for the proposition that relief is available only under the FOIA.  Ds' Mem. at 10-11.  The cited cases all involved an attempt by the plaintiff to seek relief under the APA for an agency's failure to comply with its obligations under the disclosure provisions of the FOIA, 5 U.S.C. § 552(a)(3).   None, however, involved a challenge to an agency's failure to comply with its affirmative disclosure obligations

under (a)(2) as plaintiff's case does, yet DOJ ignores this critical distinction.  For example, in

*Am. Chemistry Council, Inc. v. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 66 (D.D.C.

2013) (cited in Ds' Mem. at 10), the plaintiff challenged the adequacy of the agency's search for

records responsive to its specific FOIA request and, not surprisingly, the court concluded

plaintiff's APA claim could not stand as it duplicated the relief sought under the FOIA.

Similarly, in *Pub. Employees for Envtl. Responsibility v. U.S. Section Int'l Boundary & Water

Comm'n*, 839 F. Supp. 2d 304, 317 (D.D.C. 2012) (cited in Ds' Mem. at 10), the plaintiff

attempted to use the APA in addition to the FOIA to challenge the sufficiency of the agency's

response to its FOIA request, made under § 552(a)(3).  And while *Sierra Club v. Dep't of the

Interior*, 384 F. Supp. 2d 1, 30 (D.D.C. 2004) (cited in Ds' Mem. at 11), included a pattern and

practice claim under the APA, the court concluded that claim failed as a factual matter, not

because it duplicated a FOIA claim.

        DOJ also cites to the D.C. Circuit's opinion in *Am. Mail Line, Ltd. v. Gulick*, 411 F.3d

696 (D.C. Cir. 1969), as holding directly any challenge based on a failure to comply with (a)(2)

can be made only through the vehicle of a specific document request under § 552(a)(3) of the

FOIA.  Ds' Mem. at 11.  First and foremost, that case included no APA claim, so the court had

no occasion to address whether the existence of FOIA remedies precludes a remedy under the

APA.  Moreover, the issue presented was not whether the agency in question had refused to

comply with its affirmative obligation to make publicly available entire categories of records,

whether or not they were specifically requested.  Rather, the plaintiff was seeking a "certain

specified memorandum" upon which the agency had relied in taking an "affirmative action"

against the plaintiff, 411 F.2d at 700, and that the court ultimately concluded was exempt from

disclosure.  *Id.* at 702.  Those factors are not present here.

In short, in *Am. Mail Line, Ltd.*, the plaintiff was seeking a specific document, and so the requested relief was identical to relief afforded requests made under § 552(a)(3) of the FOIA.  In reaching this conclusion, the court construed the judicial review provisions of the FOIA, 5 U.S.C. § 552(a)(3), as extending to cases brought to enforce §§ 552(a)(1) & (2).  The court was concerned if the FOIA remedies were not available in the case before it, "Congress would have created a right without a remedy," and therefore concluded, "[t]he only viable interpretation . . . is that the judicial process is available to compel the disclosure of agency records not made available under paragraphs (1) and (2) as well as the agency records referred to in paragraph (3)."  411 F.2d at 701.  Here, however, as even DOJ concedes, the FOIA judicial review provisions would not permit this Court to order the full scope of CREW's requested injunctive relief.  *See* Ds' Mem. at 12 ("it is doubtful that FOIA would permit a court to enter an injunction 'directing OLC land DOJ to make all binding legal opinions issued by OLC available for public inspection and copying'").  Accordingly, under DOJ's own construction, review is available under the APA because that statute, not (a)(3), provides the only available avenue for relief.

Moreover, while the D.C. Circuit has recognized the somewhat circumscribed relief afforded by the FOIA in *Kennecott Utah Copper Corp. v. U.S. Dep't of the Treasury*, 88 F.3d 1191 (D.C. Cir. 1996), it has not ruled a plaintiff proceeding under the APA is limited to relief under the FOIA.  In *Kennecott*, the court first confirmed the FOIA's remedial provision, § 552(a)(4), "governs judicial review of all three types of documents," namely documents requested under §§ 552(a)(1), (2), and (3).  88 F.3d at 1202.  In that case, the plaintiff sought to compel publication in the Federal Register of a document it alleged fell within (a)(1) as a

15

"substantive rule[] of general applicability." *Id.* Finding that § 552(a)(4) of the FOIA did not authorize the district court to order publication, the appellate court affirmed the district court's dismissal of the FOIA claim. *Id.* at 1202-1203.[5] Notably, however, the court expressly declined to consider whether the APA authorized the requested relief because the plaintiff had failed to raise such a claim in district court. *Id.* at 1203. Here, by contrast, CREW has raised an APA claim, providing this Court a basis to award CREW its full requested relief separate and apart from the FOIA.

While DOJ cites cases that do not address the issue presented here, it has ignored a case from this district expressly recognizing the right of plaintiffs like CREW to seek relief under the APA when alleging a violation of the FOIA that is not connected to the processing of a particular FOIA request. In *Public Citizen, Inc. v. Lew*, 127 F. Supp. 2d 1 (D.D.C. 2000), the plaintiff challenged in part the failure of several agencies to index their major information systems as the FOIA requires. The court reviewed the defendants' compliance with the FOIA under the APA, *id.* at 9, characterizing the claims as "not present[ing] a situation in which an agency is construing a statutory exemption to FOIA's disclosure requirements." *Id.* at 12. Subsequently, in *Muttitt v. U.S. Central Command*, 813 F. Supp. 2d 221 (D.D.C. 2011), the court considered whether the plaintiff's FOIA claims before it were subject to review under the APA. In concluding they were not, the court distinguished *Public Citizen* as "directly challeng[ing] an alleged procedural violation of FOIA which was not connected to the processing of any

---

[5] *See also Irons v. Schuyler*, 465 F.2d 608 (D.C. Cir. 1972), a case brought solely under the FOIA, where the court declined to order disclosure of unpublished agency decisions pursuant to § 552(a)(2) based on the insufficiency of the allegations in the complaint. As in *Kennecott,* and unlike here, there was no APA claim for the court to consider.

particular FOIA requests." 813 F. Supp. 2d at 229.

The error of DOJ's argument that plaintiff's claim cannot be reviewed under the APA is illustrated most vividly by its suggestion a specific FOIA request by CREW to OLC would "offer[] CREW essentially the same relief that CREW seeks here." Ds' Mem. at 13. To the contrary, if CREW prevails here, OLC would be under a continuing obligation to make publicly available certain categories of records whether or not they are the subject of a specific FOIA request. CREW and the public would be spared the need to request OLC opinions on a case-by-case basis, and would not have to resort further to the courts to enforce their right to these documents. Plainly there is a world of difference between the relief CREW seeks and the relief available to a FOIA requester seeking to enforce its right to a specific document under § 552(a)(3) of the FOIA.

Further, in playing out how its proposal would work, DOJ makes clear just how futile any individual FOIA request by CREW would be. Specifically, CREW would not prevail in DOJ's view because: (1) its request would fail for a "lack of clarity," Ds' Mem. at 12 n.3; (2) "OLC opinions are not the type of documents falling within FOIA's affirmative disclosure provisions," *id.* at 2; (3) OLC opinions "are also generally exempt from disclosure under FOIA pursuant to (at least) the deliberative process and attorney-client privileges," *id.*; and (4) relief under the FOIA would differ at least "slightly." *Id.* at 12. Clearly CREW would not succeed before DOJ if it were to file a FOIA request for even a single OLC opinion, much less the corpus of opinions for which it seeks disclosure here.

In addition to challenging this Court's jurisdiction under the APA, DOJ claims this Court also lacks jurisdiction under the FOIA because CREW's claim is not "a pure FOIA claim." Ds'

Mem. at 13.  Like its other jurisdictional challenges, DOJ's argument misconstrues both the

nature of CREW's suit and the scope of the FOIA's judicial review provisions.  In any event,

CREW readily concedes this suit does not raise "a pure FOIA claim" to the extent such a claim

encompasses a FOIA request made pursuant to § 552(a)(3), making the entirety of DOJ's

argument irrelevant.  Rather, as discussed, CREW's claim is based on the affirmative disclosure

requirements of (a)(2) of the FOIA, a distinctly different provision of the statute.  Thus, to the

extent the FOIA does not authorize CREW's requested relief, the Court may proceed under the

APA.

### C.  CREW Challenges The Final DOJ Decision Not To Comply With Its Affirmative Disclosure Obligations Under (a)(2).

DOJ's broad array of meritless procedural challenges includes the claim CREW has

failed to challenge final agency action that is cognizable under the APA.  Ds' Mem. at 16.  As

DOJ correctly notes, review under the APA is limited to, *inter alia*, "final agency action for

which there is no other adequate remedy in a court[.]"  5 U.S.C. § 704.  But the government

ignores the APA's definition of "final agency action," which includes an agency's "failure to

act," 5 U.S.C. §551(13), and the statute's grant of authority to reviewing courts to "compel

agency action unlawfully withheld or unreasonably delayed."  CREW's lawsuit here presents a

classic challenge to an agency's failure to act, specifically DOJ's refusal to comply with its

mandatory disclosure obligations under (a)(2) of the FOIA.

In arguing to the contrary, DOJ falls back on its mischaracterization of this action as

challenging "a purported policy . . . not to publish all of its 'binding legal opinions,'" the

existence of which DOJ denies.  Ds' Mem. at 17.  The complaint here, however could not be

clearer:  DOJ has refused to make publicly available certain categories of records contrary to the

command of § 552(a)(2).  That refusal is captured most specifically in the Bies Letter,

reaffirming DOJ's position that OLC opinions "generally constitute neither 'final opinions . . .

made in the adjudication of cases' nor 'statements of policy and interpretations which have been

adopted by the agency.'" Bies Letter (quoting 5 U.S.C. §§ 552(a)(2)(A) & (B)).  That OLC

instead "decides whether to publish each opinion on an individualized, case-by-case basis," Ds'

Mem. at 17, supports, not undermines CREW's theory of its case.

    The cases DOJ cites in support of its position do not provide to the contrary.  In *Lujan v.

Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990), the plaintiff was seeking the "wholesale

improvement" of the land withdrawal review program at issue.  *Id.* at 90.  The Court refused to

allow the judicial process to be used for this purpose, ruling the plaintiff "cannot seek wholesale

improvement of this program by court decree, rather than in the offices of the Department or the

halls of Congress, where programmatic improvements are normally made."  *Id.* at 891.  Here, by

contrast, CREW seeks relief from this Court to implement a specific command from Congress

embodied in § 552(a)(2).  Not only does this not raise the kind of concerns identified by the

Supreme Court in *Nat'l Wildlife Fed'n*, but action by this Court is a necessary step to ensure

DOJ complies with its statutory obligations.  Nor, contrary to DOJ's claim, is this a case

involving OLC's "overall publication practices," Ds' Mem. at 18, of which its compliance with

(a)(2) is just a single step.  Instead, this case challenges OLC's failure to comply with a discrete

obligation under (a)(2) that stands on its own.

**III.    ON THE MERITS, DOJ'S MOTION MUST BE DENIED BECAUSE
THE COMPLAINT ALLEGES, AND THERE IS SUBSTANTIAL
EVIDENCE TO SUPPORT THE CLAIM, THAT AT LEAST SOME
(AND A SIGNIFICANT NUMBER OF) OLC OPINIONS FALL
WITHIN (a)(2).**

### A. DOJ's Motion Rests On Disputed Facts And Is Not The Proper Subject Of A Rule 12(b)(6) Motion.

As a threshold matter, while couched as a Rule 12(b)(6) motion to dismiss, the government's motion in substance is a motion for summary judgment replete with unsupported and unsupportable factual assertions outside those set forth in the complaint.[6]  Indeed, the government's brief is littered with hyperbolic claims completing lacking in any support whatsoever.  For example, DOJ claims without support its opinions "authoritatively resolve[] legal questions for Executive Branch policymakers as a matter of custom and practice[.]"  Ds' Mem. at 19).  OLC further claims, without support, it provides "informal advice" and "performs a variety of functions" such that "the authoritativeness of OLC's legal advice will naturally vary across these functions and contexts".  *Id.* at 22.  According to OLC, it does not issue opinions in adversarial disputes," *id.* at 24, its opinions "do not finally dispose of any agency action," *id.* at 25, and "OLC does not have authority to act on or implement matters of policy."  Ds' Mem. at 25.  Each of these assertions lacks an evidentiary foundation, as does DOJ's broad claims that "OLC opinions generally fall within the attorney-client privilege," *id.* at 27, "generally fall within the [deliberative process] privilege." *id.* at 29, and "OLC does not create 'secret law.'"  Ds' Mem. at 31.

As discussed herein, these assertions are not only in dispute, but their truth or falsity in many cases is central to DOJ's motion to dismiss for failure to state a claim.  And while DOJ has proffered a few documents on which it relies as evidence of its practices, including the Best

---

[6] For example, DOJ attempts to shoehorn into the record here in support of its claim "OLC itself does not possess policymaking authority" a declaration of OLC Special Counsel Paul P. Colborn submitted in another matter.  Ds' Mem. at 25.

Practices Memo,[7] this is only a tiny fraction of the evidentiary record of how OLC actually has functioned over the past 60 years since its creation in 1953.  Moreover a "best practices" memo is, at most, aspirational, and is not conclusive evidence of how OLC actually functions. Also missing from the record before this Court is a comprehensive listing of all of the different kinds of opinions, interpretations, and advice OLC issues, much less the facts from which the Court could assess to what extent these materials are subject to the disclosure requirements of (a)(2).

Similarly, there is not yet any evidentiary record on how OLC opinions and interpretations are treated within the executive branch.  DOJ's reference to "custom and practice" is no substitute for the evidence this Court needs to resolve the claim before it.  Nor is there a sufficient evidentiary record on the precedential value of OLC opinions, including how they are treated within OLC itself and the executive branch at large unless and until revoked or amended.  There is not even an agreed upon description of "formal opinions," further underlining the need for an evidentiary record.

As this litany of omissions makes clear, this case is not properly subject to dismissal. Resolution of CREW's claim must be postponed until CREW has had an opportunity to develop a factual record and test the government's factual assertions through discovery.  *See supra* at 42-43.

---

[7] Memorandum from David Barron, Acting Assistant Attorney General, Office of Legal Counsel, U.S. Department of Justice, for Attorneys of the Office (July 16, 2010) (Best Practices Memo) (Dkt. 8-4).

## B. The Command Of (a)(2) Is Clear And Unambiguous, Even If Its Precise Reach Cannot Be Determined In Advance.

On the merits, DOJ devotes a great deal of time attempting to inject uncertainty and a lack of clarity into CREW's claim without responding to it head on.  Specifically, DOJ attacks CREW's use of the word "binding" to describe a category of OLC records the agency must affirmatively disclose, complaining that term is both ambiguous and incomplete in describing the nature of the legal advice OLC provides.  DOJ insists the word "binding" needs further clarification before the merits of CREW's lawsuit can be considered.  Ds' Mem. at 19.

DOJ misses the mark; the issue here is not the particular label CREW or OLC attaches to a particular OLC product, but rather the nature and effect of OLC's legal opinions that dictate whether they must be affirmatively disclosed under (a)(2).  Further, the statute itself provides the starting point, imposing on DOJ an obligation to make publicly available, *inter alia*, final OLC opinions and unpublished statements of policy and interpretations.  5 U.S.C. §§ 552(a)(2)(A) & (B).

CREW's use of the word "binding," among others, is merely an attempt to capture the characteristics of those OLC opinions that are either final or statements of policy and interpretation and therefore must be made publicly available under (a)(2).  CREW's complaint also uses other terms, and contains further descriptive language shedding light on the kinds of final opinions OLC issues that are subject to this requirement.  For example, CREW's complaint references the category of "formal legal opinions" OLC has addressed in its federal records schedules, Complaint, ¶ 20, and explains the binding nature of OLC opinions is illustrated by the immunity they offer from criminal prosecution.  *Id.*, ¶ 21.  Further elucidating what makes OLC opinions "binding" and therefore subject to disclosure under (a)(2), the complaint references a

set of principles endorsed by 19 former OLC attorneys that discuss the need to publicize OLC's

written legal opinions "to ensure executive branch adherence to the rule of law[.]"  *Id.*, ¶ 22.

At bottom, the issue is not what term or terms CREW uses to describe those OLC

opinions subject to the requirements of (a)(2).  Indeed, CREW is perfectly happy to accept

OLC's proffered terms "controlling"[8] or "authoritatively resolv[ing],"[9] and the categories of

records to which they, *inter alia*, apply:  "OLC's formal legal opinions," Ds' Mem. at 21;

"'informal opinions,' which similarly serve as precedents, and constitute a body of executive law

on important matters,'" *id.* (citation omitted); and OLC's "considered view on an issue," which

"is typically authoritative within the Executive Branch."  *Id.* at 22 n.9.  OLC's terms, like

"binding," essentially describe the same thing:  opinions issued by OLC that are either stated

expressly or intended to be controlling on the executive branch.

Moreover, that any of these terms may not encompass "all the legal advice OLC provides

on a day-to-day basis," Ds' Mem. at 21, does not undermine their utility in determining which

documents OLC produces are subject to (a)(2).  To be clear, CREW is not arguing every piece of

advice OLC renders must be made publicly available under (a)(2).  Informal advice provided

orally and by email *(see* Ds' Mem. at 21) may, indeed, fall outside the parameters of (a)(2).

Similarly, on-the-spot or "tentative" advice OLC provides that has not yet been subject to

"proper and thorough review," Ds Mem. at 22, also may not fit the statutory definition of a final

---

[8] *See* Ds' Mem. at 19, quoting Best Practices Memo at 1 ("'OLC's core function, pursuant to the Attorney General's delegation, is to provide *controlling* advice to Executive Branch officials on questions of law[.]") (emphasis added).

[9] *See* Ds' Mem. at 19 ("much of [OLC's] legal advice authoritatively resolves legal questions for Executive Branch policymakers").

opinion that must be made publicly available.  Likewise, "informal legal advice" OLC provides

"the White House," (Ds Mem. at 22 (quotation omitted)), may be privileged and otherwise not

constitute a final opinion within the reach of (a)(2).  This is not to say, however, that every OLC

opinion is protected by the privileges incorporated into Exemption 5 of the FOIA, including the

attorney-client and deliberative process privileges and work product.  Indeed, such a claim

would render (a)(2) a nullity and would run counter to the abundant case law that documents

covered by (a)(2) are not subject to privilege.  *See*, *e.g.*, *NLRB v. Sears, Roebuck & Co.*, 421

U.S. 132, 148 (1975) (*Sears*).  In any event, the existence of categories of records that are neither

final opinions nor statements of policy and interpretations does not disprove the existence of

OLC records that fall within either or both of these categories.[10]

   In any event, the existence of such records is well documented.  For example, an OLC

opinion dated April 5, 1999, addressed the applicability of the Trade Secrets Act to the intra-

governmental exchange of regulatory information, 1999 OLC LEXIS 1 (1999), while an August

18, 2000 opinion answers the question of whether a former president may be indicted and tried

for the same offenses for which he was impeached by the House and acquitted by the Senate,

2000 OLC LEXIS 42 (2000).  OLC also has opined definitively on the deployment of United

States armed forces into Haiti, 2004 OLC LEXIS 23 (2004), on the authority of the Bureau of

Census to adjust population data for purposes other than apportionment, 22 Op. O.L.C. 239

(1998), and on what actions the president can take unilaterally and without congressional

---

[10] Moreover, a logical consequence of OLC's position that any claim to enforce (a)(2) must rest on an agreed upon definition is that OLC itself lacks the discretion to determine, in the first instance, which of its opinions must be made publicly available.  It would be extraordinary for DOJ to cede any discretion in implementing a statutory command like (a)(2).

consent towards centralizing border control policy, 2002 OLC LEXIS 20 (2002). Further issues

OLC has resolved definitively for the executive branch include the authority to employ White

House office personnel exempt from the Annual and Sick Leave Act under 5 U.S.C. §

6301(2)(xi) during an appropriations lapse, 36 Op. O.L.C. 1 (2011), and limitations on the

detention authority of the Immigration and Naturalization Service, 2003 OLC LEXIS 3 (2003).

While these OLC opinions vary widely in their scope and topic, they all share at least one

common denominator: they are subject to the requirements of (a)(2) as opinions that bind the

executive branch.

The most recent volume of OLC opinions published by DOJ at the same time DOJ was

claiming it had no obligation to comply with (a)(2) of the FOIA also reveals the definitive nature

of OLC rulings. The volume includes a February 27, 1969 OLC opinion concerning the

constitutionality of certain types of legislative vetoes. Although previous presidents had raised

objections to these vetoes, OLC found no constitutional objection to a "no appropriations" clause

in a statute that required the approval of a construction project by certain House and Senate

committees before Congress could appropriate funds for the project. *Supplemental Opinions for

the Office of Legal Counsel*, Volume 1 (2013), at 297. Another OLC opinion issued December

1, 1969, concludes a public law did not authorize the Commissioner of Education "to avoid

applying the full sum appropriate to the entitlement of local educational agencies for financial

assistance to federally impacted schools." *Id.* at 303. Both opinions directly impacted private

parties and both represent "definitive" or binding" rulings from OLC.

Beyond quibbling with CREW's use of the word "binding," the government insists OLC

opinions fall outside the reach of (a)(2) because if they are, in fact, "binding," it is merely "a

25

matter of custom and practice." Ds' Mem. at 20.  DOJ contends further even if OLC's advice is binding, it "ordinarily will not conclusively determine the outcome of the policy deliberation undertaken by the client agency." *Id.* at 21.  As disputed factual assertions, however, neither can properly support a motion to dismiss.

There is little or no record before this Court on either the "custom and practice" within OLC or the effect its opinions are given by specific agencies and the executive branch as a whole.  And what evidence there is supports a contrary conclusion.  The Best Practices Memo cited by the government (Ds' Mem. at 19), states unequivocally and without reference to "custom and practice," "OLC's core function, pursuant to the Attorney General's delegation, is to provide *controlling* advice to Executive Branch officials on questions of law that are centrally important to the functioning of the Federal Government."  (emphasis added).  Under any interpretation, this is the very essence of a "binding" opinion.  And what agencies do with this controlling advice is, at this point, a matter of pure speculation.   OLC provides no support whatsoever for its bald assertion such advice "ordinarily" does not dictate the outcome of an agency policy deliberation.  Ds' Mem. at 21.

The record is equally undeveloped on the range of opinions and advice OLC provides.  DOJ's argument is littered with references to various records OLC produces, from "legal advice provided to superiors," Ds' Mem. at 20, to that "answer[ing] a legal question confronting a client agency." *Id.* at 21.  According to DOJ, OLC produces "formal legal opinions," *id.*, as well as "*informal* legal advice." *Id.* (emphasis added).  Indeed, it is evident just from the government's own description OLC produces a number of categories of opinions that do fall within (a)(2).  At this point in the litigation, with only a motion to dismiss before it, the Court clearly cannot

determine as a matter of fact and law that *nothing* OLC produces must be made publicly available under § 552(a)(2).  Yet that is the conclusion DOJ asks this Court to make.  And this is precisely why plaintiff must be permitted to develop a complete factual record through the discovery process.

### C. Although Incomplete, The Existing Record Establishes There Are Many OLC Opinions That Fall Within (a)(2).

The government's argument that its alleged "policy" is not arbitrary and capricious, Ds' Mem. at 23, suffers from the same fatal flaw as its procedural arguments, namely mischaracterizing this action as challenging a policy of OLC not to publish all of its opinions. DOJ argues because OLC clearly is not required to publish *all* of the opinions it issues – formal and informal – it necessarily follows the policy alleged here cannot be arbitrary and capricious, especially in light of "judicial opinions confirming the privileged nature of OLC's opinions." Ds' Mem. at 23.  In other words, according to DOJ, if it can properly withhold even one of its opinions then CREW's lawsuit must fail.

What CREW is challenging as contrary to law is the practice of OLC to release individual opinions on a case-by-case basis as a matter of individual discretion, rather than complying with the statutory command to make whole categories of records publicly available. The success of CREW's claim does not depend on whether even one single opinion may be withheld, as the government contends.  *See* Ds' Mem. at 23-24.  Rather, CREW must demonstrate as a matter of practice OLC does not make categories of records that are either final opinions or unpublished statements of policy and interpretations publicly available as a matter of course.  Properly stated, it is clear CREW's claim easily survives a motion to dismiss.

*1.  OLC Produces Opinions That Fall Within § 552(a)(2).*

On the merits, the government's arguments rest on the single proposition that OLC produces absolutely no opinions that fall within the enumerated categories of (a)(2).  The government asks this Court to accept this statement as true despite its complete lack of evidentiary support and the principle that, in ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept the well-pleaded factual assertions in plaintiff's complaint as true.

The starting point for this Court's analysis must be the "central function" of OLC "to provide, pursuant to the Attorney General's delegation, controlling legal advice to Executive Branch Officials[.]"  Best Practices Memo at 1.  Further, "[i]n performing this function, OLC helps the President fulfill his or her constitutional duties to preserve, protect, and defend the Constitution, and to 'take Care that the Laws be faithfully executed.'"  *Id.*  OLC's authority flows from the statutory authority granted the attorney general to render opinions when requested by heads of executive departments "on questions of law arising in the administration of his department."  28 U.S.C. § 523.  Current DOJ regulations further define OLC's function as including "[p]reparing the formal opinions of the Attorney General," 28 C.F.R. § 0.25(a), and "[r]endering opinions to the Attorney General and to the heads of the various organizational units of the Department on questions of law arising in the administration of the Department."  *Id.* at § 0.25(c).[11]

OLC's own internal documents demonstrate the binding nature of the "controlling legal

[11] Recent authority from the Office of Management and Budget emphasizes "it is OLC (subject to the authority of the Attorney General and the President) . . . that provides the controlling interpretations of law for the Executive Branch."  Memorandum from Joshua B. Bolton, Director, Office of Management and Budget, *Use of Government Funds for Video News Releases to Heads of Departments and Agencies* (Mar. 11, 2005), *available* at http://m.whitehouse.gov/sites/default/files/omb/assets/omb/memoranda/fy2005/m05-10.pdf (Bolton Memo).

advice" OLC provides.  Best Practices Memo at 1.  Because its opinions are controlling, OLC

takes great care in rendering legal advice,

> particularly because it is frequently asked to opine on issues
> of first impression that are unlikely to be resolved the courts
> – a circumstance in which *OLC's advice may effectively be
> the final word on the controlling law*.

*Id.* (emphasis added).

That care is further reflected in the five-step process OLC uses to issue formal signed

opinions.  At the first stage, the opinion is assigned to both a supervisor and attorney advisor to

review the question presented, prior OLC opinions, "and leading cases to determine

preliminarily whether the question is appropriate for OLC advice and whether it appears to merit

a signed written opinion."  Best Practices Memo at 3.  Next, OLC solicits the views of

"interested agencies," including "the agency's own analysis of the question[.]"  *Id.*  The third

step consists of researching, outlining, and drafting the opinion.  As the Best Practices Memo

notes, "[a] written OLC opinion is the product of a careful and deliberate process."  *Id.*  Draft

opinions are then subject to "rigorous review within OLC."  *Id.* at 4.  OLC also apprises the

Offices of the Attorney General and the Deputy Attorney General of its work "[b]ecause OLC

issues opinions pursuant to the Attorney General's delegated authority[.]" Best Practices Memo

at 4.  The fifth step is finalizing the opinion, after which it is "printed on bond paper for

signature" and indexed with other formal OLC opinions.  *Id.*  Given the substance and formality

of this process, which in key ways mirrors the process courts use to finalize judicial opinions,

there can be no question OLC produces opinions that fall within (a)(2).

DOJ offers no explanation for how opinions created as part of this process do not fall

within (a)(2).  Nor has DOJ reconciled the fact that OLC opinions shape substantive rights by

conferring immunity from criminal prosecution, Complaint, ¶ 21, with its position that none represents either a final opinion or statement of policy.[12]  And DOJ conveniently ignores the statement of former Attorney General Griffin Bell directing the publication of OLC opinions "recogniz[ing] the value of the accumulating *body of precedent* within OLC." *Supplemental Opinions of the Office of Legal Counsel*, Vol. 1 (2013), Foreword, p. viii (emphasis added). Records that serve as precedent are the very essence of final OLC opinions and unpublished statements of policy and interpretations captured by (a)(2). *See, e.g.*, *Schlefer v. United States*, 702 F.2d 233, 237 (D.C. Cir. 1983) (records that "serve as 'law'-like precedent in subsequent cases" not subject to privilege); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 8670 (D.C. Cir. 1980).

Ignoring this evidence, DOJ insists OLC opinions are not final because they are not issued to resolve disputes between private parties.  Ds' Mem. at 24.  First, there can be no dispute OLC resolves disputes between parties; an executive order directs agency heads to submit inter-agency disputes to the attorney general, that are, in turn, delegated to OLC for resolution, "[w]henever two or more Executive agencies are unable to resolve a legal dispute between them[.]"  Exec. Order No. 12, 146, § 1-501, 3 C.F.R. § 409 (1979), reprinted as amended in 28 U.S.C. § 509 (1988).  OLC's Best Practices Memo also confirms this practice; the memo states: "A written opinion is most likely to be necessary when the legal question is the subject of a concrete and ongoing dispute between two or more executive agencies."  Best

---

[12] That OLC opinions can provide immunity from suit is not an academic matter.  In *Lebron v. Rumsfeld*, 764 F. Supp. 2d 787 (D.S.C. 2011), the court found government officials accused of approving and using harsh interrogation methods on citizens were entitled to qualified immunity, based in part on OLC's "lengthy memoranda . . . concluding that various coercive interrogation techniques . . . were lawful."  *Id.* at 803.

Practices Memo at 3.

Nevertheless, DOJ seeks to add a gloss to (a)(2) the statute cannot bear, specifically that it applies only to disputes between *private* parties.  Ds' mem. at 24.  The case it cites in support for this novel proposition provides no support for the notion only those resolutions of disputes between private parties fall within (a)(2).  In *Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 603 (D.C. Cir. 2001), the plaintiff claimed an internal report defending DOJ's prosecution of the plaintiff for environmental crimes was a final opinion subject to disclosure under (a)(2)(A).  The D.C. Circuit rejected this claim based on its characterization of the report as

> set[ting] forth the conclusions of a voluntarily undertaken
> internal agency investigation, not a conclusion about agency
> action (or inaction) in an adversarial dispute with another
> party.

*Id.* at 603.  Because the report did not explain a decision, but instead "simply rejects as a factual matter the Congressional charges of prosecutorial misconduct-charges," *id.*, it was not a final opinion subject to disclosure under (a)(2)(A).  *Id.*  Thus, the dispositive factor was not, as DOJ claims, the lack of a dispute with a private party, but the character of the report itself, which simply did not rise to the level of a "final opinion."

Nor is there any suggestion in *Sears*, also cited by DOJ, that only those opinions resolving disputes between or involving private parties are subject to (a)(2).  Indeed, the Supreme Court in *Sears* held that the FOIA, "properly construed, calls for 'disclosure of *all* 'opinions and interpretations' which embody the agency's effective law and policy[.]"  421 U.S. at 153 (quoting Kenneth C. Davis, *The Information Act: A Preliminary Analysis*, 34 U. Chi. L.

Rev. 7861 (1967)) (emphasis added).[13]

This conclusion squares with the underlying concern of Congress in enacting (a)(2) of the

FOIA – to provide public access to material that "has the force and effect of law in most cases,

yet under the present statute these Federal agency decisions have been kept secret from the

member of the public affected by the decisions."  H. Rep. No. 89-1497, at 28 (1966).  Indeed,

Congress sought to compel disclosure of decisions "that affect *any* member of the public."  *Id.*

(emphasis added).  Through § 552(a)(2), Congress sought "to prevent the development of secret

law."  *Coastal States*, 617 F.2d at 867 (quotation omitted).  This concern is present even when a

statement, interpretation, or opinion resolves purely governmental conflicts over the meaning of

a statute, rule, or policy.  How those conflicts are resolved often will impact the rights and

obligations of private parties directly, whether or not they were involved in the specific dispute

in question.  Granting public access in such situations is precisely the result Congress intended

when it enacted (a)(2).

Next, OLC argues none of its opinions can be considered "final" because the agencies

receiving those opinions retain the right to make "ultimate policy decisions."  Ds' Mem. at 25.

This ignores the fact that, regardless of how OLC opinions are adopted or incorporated into

agency policies and practices, the opinions stand as final agency opinions of OLC and the

---

[13] DOJ also relies on a decision from the D.C. Circuit, *Vietnam Veterans of Am. v. Dep't of Navy*, 876 F.2d 164 (D.C. Cir. 1989), that the government characterizes as holding the legal opinions of an agency with "authority only to dispense legal advice on certain topics, but not to actually act on behalf of the agency on those topics," are not subject to disclosure.  Ds' Mem. at 26.  This is misleading at best.  In fact, the court in that case found legal opinions of the Judge Advocates General sent to service officers upon request were not subject to disclosure because they did not contain "statements of policy or interpretations adopted" by either the Army or Navy.  *Id.* at 165.

attorney general, and represent the position of the executive branch as a whole, unless the attorney general overrules them or they are amended or withdrawn by OLC.  They have a precedential effect and constitute the controlling interpretations of law for the executive branch. *See generally* Best Practices Memo.  Indeed, they are equivalent to judicial opinions setting forth the meaning of a statute that serve as precedent for future applications of that statute.  As this Circuit recognized in *Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997), legal conclusions, even ones "not formally binding," must be disclosed even if the offices receiving those legal conclusions do not necessarily act to carry out the conclusions themselves.  *Id.* at 617.  Such conclusions provide "what the law is" and "what is not the law," and are issued as part of an "attempt[] to develop a body of coherent, consistent interpretations . . . nationwide." *Id.*  As such, they are final opinions within the reach of (a)(2).

> 2. *OLC Produces Opinions And Interpretations That Are Not*
> *Exempt From Disclosure Under The FOIA.*

DOJ asserts broadly all OLC opinions "[g]enerally" are exempt from disclosure under the attorney-client and deliberative process privileges, pointing to cases in which courts have held specific OLC opinions exempt from disclosure.  Ds' Mem. at 26.  That some courts have found particular OLC opinions exempt from disclosure under Exemption 5 of the FOIA, however, does not mean no OLC opinions are subject to (a)(2).

For example, in *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 584 F. Supp. 2d 65 (D.D.C. 2008), the court rejected the plaintiff's claim that the OLC opinion at issue had been adopted as the agency's position based on the plaintiff's failure to back up this claim with evidence.  *Id.* at 78.  In *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168 (1975), cited in Ds' Mem. at 25, the issue was whether recommendations of the Board that had no operative effect

and carried no legal weight were final opinions. *Id.* at 187. Thus, while there may be cases holding individual agency opinions, including those issued by OLC, are not subject to disclosure, this does not resolve the larger issue presented here: whether those OLC opinions and interpretations that are controlling on the executive branch must be made publicly available under (a)(2).

Simply, there is no legal or evidentiary support for the notion that each and every OLC opinion or interpretation falls within the protection of FOIA Exemption 5. To the contrary, the evidence before this Court confirms OLC produces as a category opinions and interpretations that have an operative effect, carry legal weight, and therefore are covered by § 552(a)(2) of the FOIA.

Moreover, privilege questions rise and fall on the basis of a specific factual record before the court. For the deliberative process privilege, the government must establish the communication at issue is both predecisional and deliberative. *See, e.g., Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). Within this factual context, those documents that "discuss established policies and decisions," fall outside the privilege. *Coastal States*, 617 F.2d at 868. A further factor to be considered is the nature of the decisionmaking authority vested in the author of the document. *See, e.g., Pfeiffer v. CIA*, 721 F. Supp. 337, 340 (D.D.C. 1989) ("What matters is that the person who issues the document has authority to speak finally and officially for the agency."). And even deliberative documents can lose protection if they are either adopted or incorporated by reference. *Coastal States*, 617 F.2d at 866.

The application of the attorney-client privilege is similarly fact dependent and extends to information supplied to an attorney from his or her client. So, for example, facts conveyed from

a client to his or her attorney acquired from outside sources are not privileged. *Brinton v. Dep't of State*, 636 F.2d 600, 603 (D.C. Cir. 1980). Moreover, "Exemption 5 and the attorney-client privilege may not be used to protect . . . agency law from disclosure to the public." *Tax Analysts*, 117 F.3d at 619.

The lack of any factual context here makes it impossible for this Court to conclude all or even a substantial number of OLC opinions and interpretations properly are subject to privilege. While the government cites to the Best Practices Memo as proof "OLC opinions generally fall within the attorney client privilege," Ds' Mem. at 27, that memo describes the legal advice OLC provides as "*controlling*" on "Executive Branch officials[.]" *Id.*, quoting Best Practices Memo at 1 (emphasis added), a quintessential element of a final opinion subject to disclosure. *See Coastal States*, 617 F.2d at 866. Even more fundamentally, there are no facts before the Court supporting the government's central premise that OLC has an attorney-client relationship with all the agencies in all the situations in which they seek OLC's advice. When OLC issues its controlling legal advice, it is fulfilling the role, assigned by statute to the attorney general, of rendering definitive legal advice on behalf of the executive branch. OLC's "client" therefore is the executive branch, and in rendering its opinions OLC is serving the interests of the United States, not merely those of an individual agency. This conclusion is underscored by the Constitution's directive that the president "take Care that the Laws by faithfully executed." U.S. Const. art. II, § 3. This function is vested in turn with the attorney general and delegated down to OLC to ensure legal opinions are as objective and accurate as possible, not swayed by the

more parochial concerns animating the traditional attorney-client relationship.[14]

DOJ makes the same argument regarding the deliberative process privilege, claiming OLC opinions "generally fall within the privilege."  Ds' Mem. at 29.  But again the government offers no support for this assertion beyond citing to individual cases holding that individual documents are privileged based on the record before the court.  *See* Ds' Mem. at 29-30.  That a particular undated, draft OLC opinion was privileged, for example,[15] says nothing about whether all opinions and interpretations OLC produces – even those designated as formal and subject to extensive internal procedural requirements – fall within (a)(2) and therefore are not properly withheld from disclosure.

Moreover, in interpreting Exemption 5 of the FOIA, courts have drawn a bright line between documents that reflect the deliberations of an agency and those that reflect a final agency decision.  The need for this bright line in the context of decisional documents is especially acute to avoid "secret law."  The D.C. Circuit summarized its opinions on this issue as follows:

> A strong theme of our opinions has been that an agency
> will not be permitted to develop a body of 'secret law,'
> used by it in the discharge of its regulatory duties and its
> dealings with the public . . . The theme was sound as
> early as 1971 when the court emphatically stated that
> agencies would be required to disclose 'orders and inter-
> pretations which it actually applies to cases before it,' in
> order to prevent the development of 'secret law.'

---

[14] *See*, *e.g.*, Randolph D. Moss, *Recent Developments Federal Agency Focus: The Department of Justice: Executive Branch Legal Interpretation: A Perspective From the Office of Legal Counsel*, 52 Admin. L. Rev. 1303, 1312 (Fall 2000).

[15] *CREW v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d 146, 166 (D.D.C. 2008); *Southam News v. INS*, 674 F. Supp. 881, 886 (D.D.C. 1987) (cited in Ds' Mem. at 30).

*Coastal States*, 617 F.2d at 876 (citation omitted).  The Court further described "binding agency opinions and interpretations" as "the law itself" that "'should be made available to the public . . . to prevent the development of secret law.'" *Id.* at 868, quoting *Sterling Drug, Inc. v. FTC*, 450 F.2d 698, 708 (D.C. Cir. 1971).  As a necessary consequence, this "'working law' of the agency" is "'outside the protection of Exemption 5.'" *Bhd. of Locomotive Engineers v. Surface Transp. Bd.*, 1997 U.S. Dist. LEXIS 11808, *12-13 (D.D.C. July 30, 1997) (quoting *Sears*, 4521 U.S. at 152-53).  *See also Taxation With Representation Fund v. IRS*, 646 F.2d 666, 678 (D.C. Cir. 1981) (deliberative process privilege does not apply to "final opinions that have the force of law").

To be clear, CREW is not arguing that no OLC opinion is privileged in whole or in part.  For example, OLC opinions providing the definitive legal position of the executive branch on the meaning of a statute or treaty obligation may include specific factual information provided by the agency seeking advice that properly is protected by the attorney-client privilege.  But this is a far cry from asserting – as the government does here – that the entirety of all OLC opinions and interpretations is privileged.[16]

### 3. By Refusing To Comply With § 552(a)(2) OLC Is Creating Secret Law.

Accepting at face value the government's assertion that virtually all of OLC's work is privileged would blanket that office and its work in secrecy.  This would produce a result directly at odds with Congress' purpose in enacting (a)(2) of the FOIA:  the elimination of secret

_____

[16] For this reason, DOJ's suggestion that issue preclusion prevents CREW from challenging the holdings of three cases in which CREW unsuccessfully sought OLC opinions, Ds' Mem. at 31 n.13, is completely out of place.  CREW is not attempting here to relitigate any specific ruling about any specific OLC opinion or interpretation.

law.

Before the FOIA was passed in 1966, many agencies developed bodies of law governing their treatment of the public that were kept secret.  According to a leading administrative law authority, prior to the FOIA "nearly all" agencies had "in some degree, systems of secret law." *Hearings Before the Subcommittee on Administrative Practice and Procedure of the Senate Judiciary Committee on S. 1160, S. 1336, S. 1758, and S. 1879, Administrative Procedure Act*, 89th Cong., 1st Sess. 143 (1966) (statement of Kenneth Culp Davis).  DOJ's Immigration Service, for example, granted public access to only 58 of the approximately 700,000 orders and decisions it issued in 1963, even though many of those opinions served as agency precedent.  *Id.* at 144, 187-88.  The existence of these bodies of secret laws and the problems they created critically motivated Congress in drafting the FOIA.  The House Committee on Government Operations characterized agency policy statements and interpretations as "the end product of Federal administration" with "the force and effect of law in most cases," but noted "under the present statute these Federal agency decisions have been kept secret from the members of the public affected by the decisions."  H.R. Rep. No. 1497, 89th Cong., 2d Sess. 7 (1966).

In response, Congress passed the FOIA to eliminate secret law.  *See, e.g.*, *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 796 n.20 (1989) (the FOIA's "primary objective is the elimination of 'secret law'") (quoting Frank H. Easterbrook, *Privacy and the Optimal Extent of Disclosure Under the Freedom of Information Act*, 9 J. Legal Studies 774, 777 (1980)); *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 781 (D.C. Cir. 1978) (en

banc).[17]  To accomplish this goal, Congress included in § (a)(2) of the statute the affirmative

disclosure provisions requiring agencies to make available to the public the countless orders,

opinions, statements, and instructions federal agencies issue.  H.R. Rep. No. 1497 at 7.

In the face of this authority DOJ insists OLC does not create secret or "working law,"

claiming broadly the doctrine simply does not apply here.  Ds' Mem. at 31-32.  According to

DOJ, its opinions cannot constitute secret law because they "do not regulate the public."  Ds'

Mem. at 32.  That OLC opinions have a profound effect on the public cannot, however, be

denied.  OLC opinions address the right of the United States to torture enemy combatants, to kill

Americans on foreign soil, to engage in mass data collection and surveillance techniques.

Without question, these kinds of decisions "create or determine the extent of the substantive

rights and liabilities of a person."  *Afshar v. Dep't of State*, 702 F.2d 1125, 1141 (D.C. Cir. 1983)

(quoted in Ds' Mem. at 32).[18]

The danger secret law poses to our democracy has been a matter of increasing concern in

light of revelations about the steps our nation has taken in the name of counteracting terrorism.

Senator Ron Wyden (D-OR), for one, has been an outspoken critic of OLC's refusal to make its

opinions public.  In January, in a letter to then-nominee for CIA Director John O. Brennan, Sen.

---

[17] *See also Ctr. for Effective Gov't v. U.S. Dep't of State*, 2013 U.S. Dist. LEXIS 176638, at *34-35 (D.D.C. Dec. 17, 2013) ("engag[ing] in what is in effect governance by 'secret law' . . . conflicts with the very purpose of FOIA").

[18] DOJ's citation to *CREW v. Office of Admin.*, 249 F.R.D. 1, 6-8 (D.D.C. 2008) (Ds' Mem. at 32), is curious given that the court rejected the secret law argument on the basis of a specific record before it evidencing that the executive branch had neither relied on the opinion at issue nor used it in its dealings with the public.  This begs the question of whether OLC produces any opinions or interpretations on which the executive branch relies or that are used in dealings with the public.

Wyden urged the disclosure of OLC opinions on the use of lethal force against Americans stating,

> it is critically important for Congress and the American public to have full knowledge of how the executive branch understands the limits and boundaries of this authority, so that Congress and the public can decide whether this authority has been properly defined, and whether the President's power to deliberately kill American citizens is subject to appropriate limitations.[19]

Moreover, as a factual matter there is no record here from which this Court properly can conclude no unpublished OLC opinion or interpretation constitutes working or secret law. The government's broad assertion that OLC opinions constrain agencies "as a matter of custom and practice" is completely without support. And what evidence the government cites actually supports the contrary view. DOJ concedes OLC's role is to "*conclusively* resolv[e] difficult (and sometimes disputed) legal questions," Ds' Mem. at 33-34 (emphasis added), that it yields "official authority," and its opinions represent "the law as officially pronounced[,]" *Id.* at 34 (citing *Office and Duties of Attorney General*, 6 Op. Att'y Gen. 326, 334 (1854)). DOJ further equates OLC opinions with judicial opinions, citing favorably the description of the "'body of law'" created by OLC "'as significant and as important to the country as that shown by our courts.'" Ds' Mem. at 34, citing Dawn E. Johnson, *Guidelines for the President's Legal Advisors*, 81 Ind. L. J. 1345,  1349 (Fall 2005). These all are indicia of final agency opinions and interpretations included within § 552(a)(2).[20]

---

[19] Letter from Sen. Ron Wyden to John O. Brennan, January 14, 2013, at 2, *available at* http://www.wyden.senate.gov/download/letter-to-brennan.

[20] DOJ also claims through this lawsuit, CREW seeks to prevent OLC from ever invoking privilege for any of its products, and to compel "the automatic disclosure of all OLC opinions[.]" Ds' Mem. at 35. CREW's lawsuit is not, however, an "all or nothing" proposition. To the extent

As this Circuit has made clear, the "working law" of an agency consists of "those policies or rules, and *the interpretations thereof*, that 'either create or determine the extent of the substantive rights and liabilities of a person.'" *Afshar*, 702 F.2d at 1141 (emphasis added; citation omitted). This includes an agency's opinion about "what the law is" and "what is not the law and why it is not the law." *Tax Analysts*, 117 F.3d at 617. At this point in the litigation, in the face of a motion to dismiss and without any factual record, this Court cannot properly conclude OLC produces no final, binding, or conclusive opinions or interpretations that constitute "working law" of the executive branch.

### 5. Compelling DOJ To Comply With Its Mandatory Obligations Under (a)(2) Would Not Implicate Any Significant Constitutional Concerns.

Having failed to identify any procedural or substantive defect in CREW's lawsuit, DOJ falls back on the somewhat familiar refrain that requiring DOJ to comply with its statutory obligations would raise significant constitutional concerns. As with its other claims, this one rests on the same false premise that through this lawsuit CREW seeks to compel the disclosure of "all OLC opinions." Ds' Mem. at 35.

CREW does not dispute the constitutional authority of the president to obtain confidential and candid legal advice, and DOJ's arguments to the contrary (Ds' Mem. at 36-37) are nothing but a red herring. What CREW does dispute is that the entirety of the opinions and interpretations OLC issues fall within this authority or otherwise are subject to privilege. CREW

---

individual OLC opinions are not final, binding, conclusive, or controlling and properly are subject to privilege, DOJ remains free to treat them as such, placing them outside the reach of (a)(2). What CREW seeks here is compliance by DOJ with the statutory requirement that those categories of records constituting final OLC opinions and unpublished statements of policy and interpretations issued by OLC be automatically disclosed.

also does not challenge the ability of the executive branch to obtain, in appropriate circumstances, confidential legal advice.  *See* Ds' Mem. at 38.  Again, this is a far cry from what is challenged here:  the refusal of OLC and DOJ to conform with their statutory obligation under § 552(a)(2) to make publicly available final OLC opinions, and unpublished statements of policy and interpretations that, by definition, are not privileged.  Properly construed, CREW's lawsuit threatens no constitutional interest of the president and poses no danger to the ability of the executive branch to receive "*any* confidential legal advice."  Ds' Mem. at 38 (emphasis in original).[21]

## IV.   DEFENDANTS' MERIT CLAIMS SHOULD NOT BE DECIDED WITHOUT TARGETED DISCOVERY.

As the foregoing discussion makes clear, this case is not properly subject to dismissal. Although the record currently before the Court would support summary judgment in favor of CREW, plaintiff submits both this Court and any future reviewing court would benefit from a more fully developed factual record.

Targeted interrogatories and requests for admission would establish and confirm the universe and nature of opinions and interpretations OLC issues, the process by which they are created, and how they have been treated within the executive branch.  For example, through a request for admission, OLC could be asked to confirm whether or not the Best Practices Memo accurately describes the category of OLC opinions designated as formal opinions by OLC, how

---

[21] Moreover, as a court in this district recognized recently, the ability of the president to receive confidential advice is not implicated where that advice is "distributed far beyond the President's close advisers[.]" *Ctr. for Effective Gov.*, at *21.  Thus, to the extent OLC opinions embodying legal advice and conclusions to the president have been circulated widely and relied on as precedent, publication of those opinions does not implicate constitutional concerns.

42

OLC determines which opinions it issues will be formal opinions, and the process used to create them.  Similarly, through a targeted request for admission, OLC could be asked to confirm the process it uses to index formal opinions, and the extent to which such opinions serve as precedents for OLC and others in the executive branch unless or until they are revoked or amended.  Discovery could also ferret out the extent to which OLC has issued formal opinions interpreting the Constitution, statutes, treaties, and other laws application to the United States and its agencies, officers, and employees.  Further, discovery would shed light on and clarify the extent, if at all, to which agencies are free to deviate from the controlling advice OLC offers the executive branch.  And discovery would help the Court sort out the extent to which OLC receives requests for opinions from the president or others acting on his behalf, the attorney general and other DOJ officials, agency heads, and other high ranking executive branch officials.

This discovery would go a long way in establishing a record of how OLC actually operates.  To be sure, there is some helpful evidence already before the Court beyond the hyperbolic and inaccurate assertions offered by the government from which the Court can properly conclude OLC has failed to comply with its mandatory obligations under (a)(2).  The prudent course, however, is to postpone resolution of CREW's claim until CREW has had an opportunity to develop a factual record and test the government's assertions through discovery.[22]

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for lack of subject matter

---

[22] The government may argue discovery is not proper here because this case is brought under the APA.  In the absence of a proceeding below and the identification of a formal record, discovery is the only way to effectively provide the Court with all the facts it needs to resolve CREW's legal claim.

jurisdiction, or in the alternative for failure to state a claim upon which relief can be granted,

must be denied.  Further, pursuant to LCvR 7(f), plaintiff respectfully requests this matter be

scheduled for oral argument.

<div style="margin-left:40%">

Respectfully submitted,

  */s/ Anne L. Weismann*

Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and Ethics in
Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
(202) 408-5565
aweismann@citizensforethics.org

</div>

Dated: December 23, 2013                     Attorneys for Plaintiff