**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY | ) | |
| AND ETHICS IN WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  1:13-cv-1291 (EGS) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................3

I.   CREW Lacks Standing, Because It Has Not Identified Any Injury Flowing From the Challenged Policy Here. ...............................................................................................3

II.  CREW Can Seek Disclosure of OLC Opinions Through FOIA, and Therefore Judicial Review of CREW's APA Claim is Precluded. ...........................................................4

   A.  CREW Ignores Governing D.C. Circuit Precedent Establishing the Availability of FOIA as an Adequate, Alternative Remedy. .......................................................4

   B.  CREW's Other Attempts to Undermine FOIA's Adequacy as an Alternative Remedy Are Unpersuasive. .................................................................................7

III. CREW Has Not Challenged Any Final Agency Action, and Instead Seeks Comprehensive Judicial Management of OLC's Publication Practices. ...................................9

IV.  Even Assuming Judicial Review Were Proper, CREW's Lawsuit Fails to State a Claim Upon Which Relief Can Be Granted. ...........................................................12

   A.  Although The Exact Scope of CREW's Claim Remains Unclear, CREW Is Clearly Seeking Disclosure of a Significant Number of OLC Documents. .....................12

   B.  OLC's Publication Policies Are Not Arbitrary and Capricious, as Demonstrated By the D.C. Circuit's Recent *EFF* Decision. ...................................................14

      1.  OLC's Individual Publication Policy is Entirely Proper, as CREW Itself Confirms. .........................................................................................14

      2.  OLC Opinions Do Not Fall Within § 552(a)(2) in the First Instance. .....................15

      3.  OLC Opinions Are Generally Privileged, And Therefore Need Not Be Disclosed As An Entire Category. .....................................................................20

   C.  Granting CREW's Requested Relief Would Undermine OLC's Important Role in the Executive Branch, and Raise Significant Constitutional Concerns. ..........................22

V.   Any Discussion of Discovery Is Inappropriate. ............................................................24

CONCLUSION ....................................................................................................................25

## INTRODUCTION

CREW's opposition brief (ECF No. 10) highlights the extraordinary nature of this lawsuit. Even under the most limited reading of CREW's requested relief, CREW argues that the Department of Justice's Office of Legal Counsel (OLC) is required to affirmatively publish a substantial portion of the documents through which it conveys legal advice to various entities in the Executive Branch. *See* CREW's Br. at 23. Yet CREW never disputes that OLC's core function is to provide legal advice to these entities, nor does CREW dispute that legal advice is typically protected from disclosure under applicable privileges. Indeed, the privileged nature of OLC opinions—and legal advice more generally—was confirmed earlier this month by a decision of the D.C. Circuit, which expressly rejected many of the same arguments that CREW presents in this lawsuit and concluded that an OLC opinion was not a final decision or an authoritative statement of an agency's policy but rather was confidential legal advice protected by the deliberative process privilege. *See Elec. Frontier Found. (EFF) v. Dep't of Justice*, --- F.3d ---, Case No. 12-5363, 2014 WL 25916, at *7-8 (D.C. Cir. Jan. 3, 2014).

Granting CREW's requested relief here (whatever its exact scope) would undermine OLC's important role within the Executive Branch, and would raise significant constitutional concerns about the Executive Branch's ability to seek and obtain *any* confidential legal advice. CREW dismisses these concerns as "nothing but a red herring," CREW's Br. at 41, and spends less than a page discussing them. *Id.* at 41-42. These concerns are significant, however, and cannot be ignored when evaluating the merits of CREW's lawsuit. Furthermore, these concerns animate the several threshold reasons why CREW's lawsuit must be dismissed.

Turning to those threshold reasons, first, CREW lacks standing to challenge OLC's publication practices. CREW has undoubtedly alleged that it is interested in obtaining OLC opinions generally, including an allegation that CREW has a pending FOIA request for an OLC

opinion.   CREW's allegations do not, however, explain how OLC's alleged policy here has concretely affected any of those prior or pending FOIA requests.   The absence of allegations establishing such a nexus highlights the fundamental disconnect between CREW's allegations of injury and the specific policy being challenged here.

Second, CREW's APA claim cannot proceed because FOIA itself provides an adequate remedy.   CREW dismisses the numerous cases holding as much by asserting that those decisions involve claims under FOIA's individual request provision, § 552(a)(3), not the affirmative disclosure provisions of § 552(a)(2).   But the D.C. Circuit has squarely held that the proper way to enforce § 552(a)(2) is pursuant to § 552(a)(3); thus, those cases are indeed applicable.   CREW also argues that APA review is not precluded because FOIA "would not permit this Court to order the full scope of CREW's requested injunctive relief."   CREW's Br. at 15.   This standard, however, is plainly incorrect.   Relief need not be *identical* to preclude APA review; the relief simply needs to be *of the same genre*.   FOIA plainly offers relief of the same genre as what CREW seeks here—namely, judicially compelled disclosure of OLC opinions.   Judicial review under the APA is precluded, therefore, because FOIA offers an adequate, alternate remedy.

Third, CREW has failed to challenge any final agency action.   CREW argues that its lawsuit seeks "to implement a specific command from Congress embodied in § 552(a)(2)."   CREW's Br. at 19.   In reality, however, this suit involves precisely the sort of vague and ill-defined challenge to an agency's programmatic practices that the Supreme Court has repeatedly and forcefully rejected.   To bring a "failure to act" claim under the APA, a party must identify a discrete agency action that was unlawfully withheld, and CREW's suit is wholly deficient in this regard.   Indeed, CREW has not identified even a single example of OLC's non-compliance—*i.e.*, a single example of OLC failing to make public a non-exempt document that purportedly falls

within one of the § 552(a)(2) categories.  This failure to identify even a single instance of non-compliance underscores the fact that CREW is challenging an abstract alleged policy, rather than a discrete, final agency action, as the APA requires.

Finally, throughout its brief, CREW repeatedly requests the opportunity to conduct discovery in this case.  But CREW cannot rely on the prospect of future discovery to overcome its antecedent burden—to file a complaint that raises CREW's right to relief beyond a speculative level.  Here, CREW has not carried that burden.  The proper course, therefore, is to dismiss CREW's Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure.

## ARGUMENT

### I.   CREW LACKS STANDING, BECAUSE IT HAS NOT IDENTIFIED ANY INJURY FLOWING FROM THE CHALLENGED POLICY HERE.

CREW's Complaint challenges OLC's alleged practice of not making publicly available certain opinions "that – as a class of documents – fall within the categories of documents" subject to 5 U.S.C. § 552(a)(2).  CREW's Br. at 9.  CREW lacks standing, however, because the Complaint does not identify any injury flowing specifically from this purported policy.

To be sure, CREW alleges a general interest in obtaining OLC opinions, Compl. ¶ 6, and also the existence of a pending FOIA request for an OLC opinion, Compl. ¶ 7.  But neither of those allegations identifies an injury connected to the policy at issue here.  Specifically, the Complaint does not allege that the pending FOIA request is for an OLC opinion that is covered by § 552(a)(2), or that CREW intends to submit FOIA requests for other OLC opinions covered by § 552(a)(2) and that the purported policy would result in OLC unlawfully withholding the requested opinions.  Thus, CREW has not identified any injury flowing from the purported OLC policy being challenged here.

The government's standing argument does not ask the Court to "determine, as a factual matter, that OLC opinions do not fall within the categories (a)(2) embraces."  CREW's Br. at 9. Instead, the government's standing argument is that, even assuming *arguendo* that some OLC opinions fall within § 552(a)(2), CREW has not alleged that it has ever requested and been denied such opinions, or that its pending FOIA request is for any such opinion.  CREW has thus failed to establish any injury flowing from OLC's implementation of § 552(a)(2).

## II.   CREW CAN SEEK DISCLOSURE OF OLC OPINIONS THROUGH FOIA, AND THEREFORE JUDICIAL REVIEW OF CREW'S APA CLAIM IS PRECLUDED.

### A.   CREW Ignores Governing D.C. Circuit Precedent Establishing the Availability of FOIA as an Adequate, Alternative Remedy.

As CREW acknowledges, judicial review under the APA is precluded when another statute provides an adequate, alternative remedy.  *See* 5 U.S.C. § 704; CREW's Br. at 12.  CREW resists the applicability of this principle, however, by asserting that this case arises under § 552(a)(2) rather than § 552(a)(3), CREW's Br. at 13-14, and because FOIA "would not permit this Court to order the full scope of CREW's requested injunctive relief."  *Id.* at 15.  Both of these arguments are fundamentally flawed and contrary to governing D.C. Circuit precedent.

*First*, CREW distinguishes the "litany of citations" holding that relief is available only under FOIA (and not the APA) on the basis that those cases involved challenges arising under § 552(a)(3) rather than § 552(a)(2).  *See* CREW's Br. at 13.  But that distinction is irrelevant here, because § 552(a)(3) is also the mechanism by which plaintiffs may enforce § 552(a)(2). *See Am. Mail Line, Ltd. v. Gulick*, 411 F.2d 696, 701 (D.C. Cir. 1969) ("[I]f the agency refuses to comply with paragraphs (1) or (2) it is then subject to suit under the processes spelled out in paragraph (3).").  The cases arising under § 552(a)(3) are still applicable, therefore, because that same remedy—a lawsuit brought pursuant to § 552(a)(3)—is equally available here, to enforce CREW's claims under § 552(a)(2).

To be sure, CREW is correct that *Gulick* does not itself hold that "the existence of FOIA remedies precludes a remedy under the APA." CREW's Br. at 14. But *Gulick* does implicitly suggest as much by noting that, without the ability to sue under § 552(a)(3), "Congress would have created a right without a remedy" in § 552(a)(2). *Gulick*, 411 F.2d at 701. In any event, the government cited *Gulick* because it plainly establishes the availability of the § 552(a)(3) remedy here—a remedy that numerous other courts have held is sufficient to preclude APA review. *See* Gov't's Br. (ECF No. 8-1) at 10-11.[1]

*Second*, CREW argues that review under the APA is available because FOIA does not offer CREW identical forms of relief. Specifically, CREW asserts that "as even DOJ concedes, the FOIA judicial review provisions would not permit this Court to order the full scope of CREW's requested injunctive relief," and therefore "under DOJ's own construction, review is available under the APA because that statute, not (a)(3), provides the only available avenue for relief." CREW's Br. at 15. But again, this argument is fundamentally flawed. CREW misstates the relevant standard, which does not require the alternative remedy to provide *identical* relief, only relief *of the same genre*. *See, e.g.*, *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) ("[T]his court has held that the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'").

Here, FOIA is clearly an adequate, alternative remedy. Not only does FOIA offer relief of the same genre—*i.e.*, judicially required disclosure of OLC opinions—but it also offers *de novo* district court review of CREW's claim that OLC opinions must be disclosed under

---

[1] CREW's other attempts to distinguish *Gulick* are unpersuasive. CREW lists several "factors . . . not present here," such as the fact that "the plaintiff was seeking a 'certain specified memorandum' upon which the agency had relied in taking an 'affirmative action' against the plaintiff, and that the court ultimately concluded was exempt from disclosure." CREW's Br. at 14-15 (quoting *Gulick*, 411 F.2d at 700). Those "factors," however, are wholly irrelevant to the *Gulick* court's holding that the proper way to enforce § 552(a)(2) is through § 552(a)(3).

§ 552(a)(2).  *See El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005) ("Succinctly put, where a statute affords an opportunity for *de novo* district-court review, the court has held that APA review was precluded[.]" (internal quotation marks and modifications omitted)).

CREW disputes the adequacy of FOIA's relief by asserting that prevailing on this APA lawsuit would provide greater relief:

> [I]f CREW prevails here, OLC would be under a continuing obligation to make publicly available certain categories of records whether or not they are the subject of a specific FOIA request.  CREW and the public would be spared the need to request OLC opinions on a case-by-case basis, and would not have to resort further to the courts to enforce their right to these documents.

CREW's Br. at 17.  Again, aside from ignoring the correct standard, this argument is also meritless.  CREW can plainly seek all of the documents sought in this case simply by filing a FOIA request for those documents.[2]  And in the event that any documents are withheld, CREW could then file a lawsuit and make the broad argument presented here—that all OLC opinions (or certain categories of OLC opinions) must be affirmatively published pursuant to § 552(a)(2).[3]  Even under a § 552(a)(3) FOIA request and lawsuit, therefore, CREW can still seek its desired relief—disclosure of entire categories of OLC opinions.[4]

---

[2] CREW cannot seriously maintain that APA review must be available because CREW is unwilling to submit a FOIA request that "reasonably describes" the requested records.  5 U.S.C. § 552(a)(3); *cf. Irons v. Schuyler*, 465 F.2d 608, 612-13 (D.C. Cir. 1972) (upholding the application of the reasonable description requirement, even when the records were allegedly subject to § 552(a)(2)).  If anything, CREW's unwillingness to reasonably describe the records highlights why CREW is challenging an abstract policy, rather than any discrete agency decisions.  *See* Section III, *infra*.

[3] Indeed, CREW recently advanced many of these arguments (unsuccessfully) as amicus curiae in the recent D.C. Circuit FOIA litigation over an OLC opinion, which was itself a § 552(a)(3) suit.  *See* Brief for Amici Curiae CREW et al., *EFF v. Dep't of Justice*, Case No. 12-5363 (D.C. Cir. filed Mar. 22, 2013).

[4] CREW's argument is also contrary to the weight of authority:  other courts have held that APA review is precluded even when the plaintiff is seeking broader relief than what is available under FOIA (*i.e.*, even when the plaintiff seeks prospective relief against an agency's

In any event, CREW's opposition wholly ignores the relevant standard for determining the adequacy of alternative relief, entirely failing to address either the *Garcia* or *El Rio Santa Cruz* D.C. Circuit decisions.  *See* Gov't Br. at 10, 12-13.  These two decisions, by themselves, are sufficient to determine that CREW's APA claim is precluded.

### B.   CREW's Other Attempts to Undermine FOIA's Adequacy as an Alternative Remedy Are Unpersuasive.

Even were the Court to consider the remainder of CREW's arguments, none of them alters the above analysis.  CREW first relies on *Public Citizen, Inc. v. Lew*, 127 F. Supp. 2d 1 (D.D.C. 2000), for the proposition that CREW can "seek relief under the APA when alleging a violation of the FOIA that is not connected to the processing of a particular FOIA request." CREW's Br. at 16.  That case, however, does not support CREW's attempt to bypass the FOIA remedy here.[5]   In *Public Citizen*, the plaintiff challenged various agencies' alleged failure to publish "an index of all major information systems of the agency[.]"  5 U.S.C. § 552(g)(1).  The Court held that these claims—unconnected to the disclosure of documents, the gravamen of a § 552(a)(3) claim—should be reviewed under the APA, because they could not be pursued under § 552(a)(3), and could not be remedied through FOIA's traditional remedy provision.  *See* 5 U.S.C. § 552(a)(4)(B) (permitting courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant").

---

alleged policy or practice).  *See Walsh v. Dep't of Veterans Affairs*, 400 F.3d 535, 537-38 (7th Cir. 2005); *see also Feinman v. FBI*, 713 F. Supp. 2d 70, 76-77 (D.D.C. 2010); *Edmonds Inst. v. Dep't of Interior*, 383 F. Supp. 2d 105, 111 & n.9 (D.D.C. 2005); *Sierra Club v. Dep't of Interior*, 384 F. Supp. 2d 1, 30 (D.D.C. 2004); *Essential Info., Inc. v. U.S. Info. Agency*, Case No. 96-1194, 1996 WL 968472, at *3-4 (D.D.C. Nov. 27, 1996), *aff'd*, 134 F.3d 1165 (D.C. Cir. 1998).  This argument is also contrary to the *Gulick* court's assumption that § 552(a)(2) could be enforced either through § 552(a)(3) or not at all.  *See Gulick*, 411 F.2d at 701.

[5] Contrary to CREW's assertion, the government's opening brief expressly addressed (and endorsed) this case.  *See* Gov't Br. at 13 n.4.

In the present case, however, CREW can plainly pursue its claims under § 552(a)(3), which can then be remedied through § 552(a)(4)(B). As discussed in the government's opening brief, the ultimate relief sought here is the disclosure of OLC opinions—which is precisely the relief offered by §§ 552(a)(3) and 552(a)(4)(B). *See* Gov't Br. at 12-13. Thus, unlike *Public Citizen*, this suit is not a challenge to a peripheral agency practice unconnected to the disclosure of documents. Instead, this suit challenges the withholding of certain documents, and therefore must be brought under §§ 552(a)(3) and 552(a)(4)(B) rather than the APA.[6]

CREW also attempts to undermine FOIA by arguing that the government's opening brief "makes clear just how futile any individual FOIA request by CREW would be." CREW's Br. at 17. CREW offers four reasons why this is so, but two of those reasons have already been discussed above (the potential difference in relief, and the obligation to submit a FOIA request that reasonably describes the requested records). And the other two reasons—that OLC opinions do not fall within § 552(a)(2), and are generally exempt as privileged—are merits-based defects that would apply to any APA claim as much as a FOIA claim. Thus, they do not offer any basis for concluding that FOIA is inadequate as compared to the APA—both claims would suffer from the same flaws. Accordingly, none of these reasons undermines the adequacy of FOIA as an alternative remedy.[7]

---

[6] The other decision cited by CREW, *Muttitt v. United States Central Command*, 813 F. Supp. 2d 221 (D.D.C. 2011), also supports the inapplicability of the APA here. In that case, the plaintiff was "not only challenging the withholding of agency records but [was] also asserting claims regarding the agencies' failure to provide him with time estimates[.]" *Id.* at 227. Thus, the challenged policy in that case—the failure to provide the requester with time estimates—was a procedural violation, unconnected to the substantive withholding or disclosure of documents.

[7] This conclusion is also confirmed by the line of cases holding that a remedy is not inadequate simply because a particular plaintiff cannot prevail under that alternative review scheme. *See Town of Sanford v. United States*, 140 F.3d 20, 23 (1st Cir. 1998) ("A legal remedy is not inadequate for purposes of the APA because it is procedurally inconvenient for a given plaintiff, or because plaintiffs have inadvertently deprived themselves of the opportunity to

In sum, CREW's attempts to downplay the remedies offered by § 552(a)(3) are unpersuasive.  APA review is therefore precluded, and CREW's Complaint must be dismissed.[8]

## III.   CREW HAS NOT CHALLENGED ANY FINAL AGENCY ACTION, AND INSTEAD SEEKS COMPREHENSIVE JUDICIAL MANAGEMENT OF OLC'S PUBLICATION PRACTICES.

CREW's APA claim also fails because it does not challenge any final agency action.  Although CREW characterizes its lawsuit as "present[ing] a classic challenge to an agency's failure to act," CREW's Br. at 18, CREW fails to identify even a single instance in which OLC has actually failed to act—*i.e.*, in which OLC has failed to publish an OLC opinion that § 552(a)(2) purportedly requires to be disclosed.  CREW's challenge thus amounts to nothing more than a request for general judicial management of OLC's overall publication practices.

In order to challenge an agency's failure to act, the plaintiff must allege that the agency has "failed to take a *discrete* agency action that it is *required to take*."  *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (hereafter *SUWA*).  This requirement precludes "broad programmatic attack[s]" on agency programs.  *Id.*  The Supreme Court's decisions in *SUWA* and *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), provide instructive examples about the types of claims that are precluded.

First, in *SUWA*, the Court rejected a plaintiff's attempt to compel agency compliance with a statute requiring the Bureau of Land Management to manage wilderness areas "in a manner so

---

pursue that remedy."); *see also Turner v. Dep't of Hous. & Urban Dev.*, 449 F.3d 536, 540-41 (3d Cir. 2006); *Mitchell v. United States*, 930 F.2d 893, 897 (Fed. Cir. 1991); *Am. Rd. & Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, 82-83 (D.D.C. 2012), *summarily aff'd*, Case No. 12-5244, 2013 WL 599474 (D.C. Cir. Jan. 28, 2013) (per curiam).

[8] Before proceeding, it should also be noted that CREW has abandoned any attempt to proceed under FOIA directly.  CREW expressly disavows any FOIA claim under § 552(a)(3), and does not attempt to justify how it could bring a claim directly under § 552(a)(2).  *See* CREW's Br. at 18.  Accordingly, the government's argument that "CREW's present Complaint cannot be construed as including a FOIA claim," Gov't's Br. at 14, has effectively been conceded.  The sole claim in CREW's Complaint, therefore, is an APA claim.

as not to impair the suitability of such areas for preservation as wilderness."  542 U.S. at 65

(internal quotation marks omitted).  As here, the plaintiff in *SUWA* alleged that the agency was

not satisfactorily fulfilling the statutory objectives.  But allowing a court to enforce such "broad

statutory mandates," the Supreme Court ruled, would lead to "judicial entanglement in abstract

policy disagreements which courts lack both expertise and information to resolve," and would

"inject[] the judge into day-to-day agency management."  *Id.* at 66-67.  "The prospect of

pervasive oversight by federal courts over the manner and pace of agency compliance with such

congressional directives is not contemplated by the APA."  *Id.* at 67.

Similarly, in *Lujan*, the Court rejected a plaintiff's attempt to challenge the Bureau of

Land Management's "land withdrawal review program."  497 U.S. at 890.  That "program" was

not a discrete agency action, but instead referred to the "continuing (and thus constantly

changing) operations of the BLM" in implementing the Federal Land Policy and Management

Act of 1976.  *Id.*  Specifically, the "program" referred to a collection of "1250 or so individual

classification terminations and withdrawal revocations."  *Id.* (internal quotation marks omitted).

The APA, the Court held, did not permit review of the "entirety" of such a program, *id.*; thus, the

plaintiff had not stated a valid claim under the APA.

Here, CREW describes this lawsuit as challenging "DOJ's refusal to comply with its

mandatory disclosure obligations under (a)(2) of the FOIA."  CREW's Br. at 18.  In other words,

CREW is not challenging any *discrete* instances of non-compliance with § 552(a)(2), but rather

OLC's general program for compliance with that statute, which, as in *Lujan* and *SUWA*, actually

consists of hundreds of individualized decisions.  Indeed, CREW appears to acknowledge that

OLC makes individual determinations on whether to publish its opinions, and at points CREW

appears to concede that some OLC opinions are exempt from disclosure under FOIA.  *See*

CREW's Br. at 10, 23-24, 33-34.  And yet, instead of challenging individual decisions through a FOIA suit, CREW instead seeks broad, judicially managed improvement of OLC's publication process.  This type of challenge—regarding an agency's general compliance with a statutory command—is precisely what is precluded by *SUWA* and *Lujan*.[9]  And again, the generalized nature of CREW's challenge is highlighted by the fact that CREW has not identified even a single specific violation by OLC.

CREW seeks to avoid the *SUWA* and *Lujan* decisions by characterizing its claim as "seek[ing] relief from this Court to implement a specific command from Congress embodied in § 552(a)(2)."  CREW's Br. at 19.  But that was true in both *SUWA* and *Lujan* as well, where the plaintiffs sought to implement statutory commands—to manage wilderness areas in a way that does not impair their suitability for preservation, *SUWA*, 542 U.S. at 66; and to manage public lands consistent with certain provisions of the Federal Land Policy and Management Act.  *See Lujan*, 497 U.S. at 879 (listing the statutory provisions alleged to have been violated).  The plaintiffs in those cases likewise contended that they were seeking implementation of specific commands from Congress, but the generalized, abstract nature of their claims precluded review. CREW's claim here falls squarely within that same category.

Similarly, CREW asserts that judicial review in this case "is a necessary step to ensure DOJ complies with its statutory obligations."  CREW's Br. at 19.  But again, the *SUWA* and *Lujan* plaintiffs made similar claims.  *See Lujan*, 497 U.S. at 891 (noting that "Respondent alleges that violation of the law is rampant within this program," but even so "[u]nder the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes

---

[9]  CREW's inability to articulate precisely which OLC opinions it believes must be disclosed under § 552(a)(2), *see* Section IV.A, *infra*, underscores one of the reasons why courts have declined to view the APA as an invitation to judicial supervision and oversight of agencies' general programmatic operations.

it harm"); *see also SUWA*, 542 U.S. at 66 ("General deficiencies in compliance . . . lack the specificity requisite for agency action.").  Just as in *SUWA* and *Lujan*, therefore, CREW's claim here is precluded.[10]

In short, CREW has failed to establish that it is challenging a discrete, final agency action.  Instead, CREW is challenging OLC's general publication practices—precisely the type of broad, generalized challenge that is prohibited under the APA.

## IV.   EVEN ASSUMING JUDICIAL REVIEW WERE PROPER, CREW'S LAWSUIT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Even aside from the three threshold barriers to judicial review discussed above, CREW's APA claim must still be dismissed on the merits.  Generally speaking, OLC opinions do not fall within § 552(a)(2), and in any event are properly withheld as privileged—as confirmed just a few weeks ago by the D.C. Circuit.

### A.   Although The Exact Scope of CREW's Claim Remains Unclear, CREW Is Clearly Seeking Disclosure of a Significant Number of OLC Documents.

As stated in the government's opening brief, "[t]o fully consider the merits of CREW's lawsuit," CREW must "articulate what it means by 'binding' OLC opinions."  Gov't's Br. at 19. In its opposition brief, CREW clarifies this point, stating that "binding" legal opinions are those "opinions issued by OLC that are either stated expressly or intended to be controlling on the

---

[10] CREW is also incorrect to assert that its lawsuit does not "raise the kind of concerns" implicated by *SUWA* and *Lujan*.  CREW's Br. at 19.  Even assuming *arguendo* that some OLC opinions fall within the ambit of § 552(a)(2) (notwithstanding the D.C. Circuit's conclusion to the contrary in *EFF*, 2014 WL 2014 WL 25916, at *7-8), CREW acknowledges that each OLC opinion is different, and that some OLC opinions are privileged.  *See* CREW's Br. at 40-41 n.20, 33-34.  Permitting CREW's lawsuit to proceed, therefore, would inject the court into day-to-day supervision of OLC's publication practices—requiring the Court to determine, for every piece of advice that OLC produces, whether that advice must be published under § 552(a)(2).  *See SUWA*, 542 U.S. at 66 ("If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved[.]").

executive branch." CREW's Br. at 23.[11] Included within this description are the following categories of OLC documents: OLC's formal legal opinions; OLC's informal opinions that similarly serve as precedents; and any other documents containing OLC's considered views on an issue. *See id.*

Although CREW has now provided some clarification regarding its understanding of the term "binding," it is still not entirely clear what advice CREW believes must be disclosed. The broadest reading of CREW's opposition (and Complaint) is that *all* such "binding" OLC advice must be disclosed. *See, e.g.*, CREW's Br. at 22 ("CREW's use of the word 'binding,' among others, is merely an attempt to capture the characteristics of those OLC opinions that are either final or statements of policy and interpretation and therefore must be made publicly available under (a)(2)."). CREW appears to adopt a more limited position in other places, however, seemingly conceding that some "binding" OLC advice may validly fall outside of § 552(a)(2). *See, e.g.*, CREW's Br. at 33 ("That some courts have found particular OLC opinions exempt from disclosure under Exemption 5 of the FOIA, however, does not mean no OLC opinions are subject to (a)(2)."); *id.* at 37 ("OLC opinions providing the definitive legal position of the executive branch on the meaning of a statute or treaty obligation may include specific factual information provided by the agency seeking advice that properly is protected by the attorney-client privilege.").

Even assuming that CREW has adopted the more limited position, it is nonetheless clear that CREW is seeking the disclosure of a tremendous number of OLC advice documents. CREW's definition of "binding" includes not only OLC's published, formal opinions, but

---

[11] Through this formulation, CREW appears to concede that OLC opinions are binding only as a matter of custom and practice. *See also EFF*, 2014 WL 25916, at *8 (noting that "agencies customarily follow OLC advice that they request"). This concession undermines CREW's later argument, *see* Section IV.B, *infra*, that OLC opinions have the force of law.

apparently also informal opinions that are considered controlling on the Executive Branch.  *See* CREW's Br. at 22-23.  And again, assuming that CREW is advancing the more limited position discussed above, these "binding" advice documents may be exempt from disclosure apparently only in very limited circumstances.  *See, e.g.*, *id.* at 23 (stating that "[i]nformal advice provided orally and by email may . . . fall outside the parameters of (a)(2)," as well as "on-the-spot or 'tentative' advice" and informal advice to the White House).

Even under the more limited reading, therefore, CREW is still arguing for an expansive view of OLC's disclosure obligations, which would capture a tremendous amount of legal advice that OLC provides to agencies.  *See* Gov't's Br. at 20-22.  This extraordinary requested relief highlights why CREW's claim must fail.  *See* Section IV.C, *infra*.

> **B.     OLC's Publication Policies Are Not Arbitrary and Capricious, as Demonstrated By the D.C. Circuit's Recent *EFF* Decision.**

On the merits, there are three separate and independent reasons why CREW's Complaint fails to state a valid claim: (1) OLC's individualized publication policy is unquestionably proper, as is confirmed by CREW's own acknowledgment that each OLC opinion must be reviewed individually; (2) OLC opinions do not fall within the reach of § 552(a)(2); and (3) OLC opinions are generally privileged, and thus need not be disclosed as an entire category.

> **1.     OLC's Individual Publication Policy is Entirely Proper, as CREW Itself Confirms.**

In its opposition, CREW shifts away from challenging a policy that OLC must disclose *all* opinions, *cf.* Compl. ¶¶ 20, 38, and instead to challenging "the practice of OLC to release individual opinions on a case-by-case basis as a matter of individual discretion[.]"  CREW's Br. at 27.  But this individualized policy is unquestionably proper, as CREW itself confirms.

Repeatedly, CREW's opposition emphasizes that OLC need not disclose all of its advice. *See, e.g.*, CREW's Br. at 23 ("To be clear, CREW is not arguing every piece of advice OLC

renders must be made publicly available under (a)(2)."); *id.* at 37 ("To be clear, CREW is not arguing that no OLC opinion is privileged in whole or in part."); *id.* at 40-41 n.20.

In light of these statements, OLC's individualized publication policy cannot possibly be arbitrary and capricious.  If not *all* of OLC's advice must be disclosed, then the advice must necessarily be reviewed on an individual, case-by-case basis to determine whether publication is appropriate.  OLC could not possibly make publication decisions based on entire "categories of records," rather than based on each individual record.  An individualized publication process is entirely proper, therefore, as CREW itself confirms.

### 2.      OLC Opinions Do Not Fall Within § 552(a)(2) in the First Instance.

Despite CREW's argument that "many" OLC opinions fall within § 552(a)(2), CREW's Br. at 27, and that "the existence of such records is well documented," *id.* at 24, CREW does not identify even a single court decision holding that OLC opinions fall within § 552(a)(2).  And as discussed in the government's opening brief (at 26), the significant number of decisions permitting OLC to withhold its opinions is good evidence that such opinions do not fall within § 552(a)(2).

Indeed, just several weeks ago the D.C. Circuit issued its decision in *EFF*, 2014 WL 25916, which forecloses CREW's claim here.  In that case, a requester sought a formal, final OLC opinion that was prepared for the FBI—an opinion that would clearly qualify as "binding" in CREW's view—and the plaintiff (and CREW as amicus curiae) argued that the opinion must be disclosed because it represented the agency's effective law and policy.  The D.C. Circuit squarely rejected this argument, concluding that "OLC is not authorized to make decisions about the FBI's investigative policy, so the OLC Opinion cannot be an authoritative statement of the agency's policy."  *Id.* at *7.  The court also went on to reject the "working law" argument:

EFF argues that the OLC Opinion must be "working law" because it is controlling (insofar as agencies customarily follow OLC advice that they request), precedential, and can be withdrawn.  That the OLC Opinion bears these indicia of a binding legal decision does not overcome the fact that OLC does not speak with authority on the FBI's policy; therefore, the OLC Opinion could not be the "working law" of the FBI unless the FBI "adopted" what OLC offered.  In *Brinton*, we rejected the appellant's claim that memoranda must be released because they constituted the "final opinions" of the Department of State.  We explained that while the privilege does not protect final decisions or authoritative statements on agency policy, the "final opinions" of the Department of State's Legal Adviser, "who has no authority to make final decisions concerning United States policy in the Middle East," are not final decisions of the Department of State.  The same is true of the OLC Opinion in this case.

*Id.* at *8 (internal citations omitted).

This binding decision is dispositive of CREW's claim here.  Pursuant to *EFF*, OLC opinions are not final agency decisions, and therefore need not be disclosed under § 552(a)(2).  Given that the D.C. Circuit has now resolved the "working law" issue against CREW—concluding that OLC opinions are advice documents, rather than statements of agency policy, *see EFF*, 2014 WL 25916, at *7—there is no need for the Court to go any further; CREW's claim here must be rejected.

None of CREW's arguments to the contrary is persuasive.  CREW discusses the function of OLC and "the five-step process OLC uses to issue formal signed opinions," CREW's Br. at 29, but as *EFF* confirms, even those formal opinions may validly be withheld.  Additionally, CREW's cited authorities just confirm that OLC's function is to provide *advice* to other components of the Executive Branch—not to issue final opinions in the adjudication of cases, or to decide matters of policy.  *Cf.* 28 C.F.R. § 0.25(a), (c).

CREW also asserts that OLC opinions serve as precedents, which is "the very essence of . . . unpublished statements of policy and interpretations captured by (a)(2)."  CREW's Br. at 30.  But again, *EFF* confirms that although an OLC opinion may be considered precedential and thus resemble "a binding legal decision," that "does not overcome the fact that OLC does not

speak with authority on the [agency's] policy[.]" *EFF*, 2014 WL 25916, at *8. Furthermore, the case CREW cites for that proposition, *Schlefer v. United States*, 702 F.2d 233 (D.C. Cir. 1983), is inapplicable for a more fundamental reason—OLC opinions do not adjudicate any matters involving private parties. *See id.* at 244 (ordering disclosure of legal opinions that were "actually applie[d] in cases before" the agency in matters involving outsiders). OLC opinions are not issued in adjudicatory disputes involving private parties, and do not finally dispose of any agency regulation of private parties. *See* Gov't's Br. at 24-25, 31-32; *see also EFF*, 2014 WL 25916, at *5-7 (discussing how the "working law" cases are not dispositive because OLC "did not explain and apply established policy" (internal quotation marks omitted)).

CREW responds that nothing in § 552(a)(2) justifies limiting the provision "only to disputes between *private* parties." CREW's Br. at 31. But again, that issue was raised by the parties in *EFF*, and the D.C. Circuit expressly held that the "working law" cases were inapplicable. In any event, this limitation is supported by the text of § 552(a)(2)(A) itself, as well as the sanction contained at the end of § 552(a)(2)—precluding an agency from using any of the § 552(a)(2) documents "as precedent . . . *against a party other than an agency*" if the document has not been properly published. 5 U.S.C. § 552(a)(2) (emphasis added); *see also Schlefer*, 702 F.2d at 244 ("A strong theme of our opinions has been that an agency will not be permitted to develop a body of "secret law," used by it *in the discharge of its regulatory duties and in its dealings with the public*[.]" (emphasis added)).[12]

---

[12] Another authority relied upon by CREW—a law review article by Professor Davis—makes clear the degree to which § 552(a)(2) was understood as involving the adjudication of private rights. *See* Kenneth C. Davis, *The Information Act: A Preliminary Analysis*, 34 U. Chi. L. Rev. 761, 774 (1967) (discussing the scope of the provision and stating that "[t]he case law of the agencies has to be available for public inspection" because, as an example, "[i]f a letter ruling interprets tax law in favor of X, fairness requires that Y who has the same problem should have opportunity to know the interpretation in X's case").

CREW also relies on FOIA's legislative history to argue that § 552(a)(2) was intended to promote government transparency generally, not just transparency over agency precedents used in disputes with private parties.  *See* CREW's Br. at 32.  But this argument inaccurately describes the legislative history.  For one thing, CREW relies on a single phrase from the House Report to argue that "Congress sought to compel disclosure of decisions 'that affect *any* member of the public.'"  CREW's Br. at 32 (quoting H. Rep. No. 89-1497 at 28 (1966), emphasis added by CREW).  CREW's quoted phrase, however, was attached to Congress's concern about disclosing *staff manuals and instructions* that affect members of the public.  *See* 5 U.S.C. § 552(a)(2)(C) (requiring the affirmative disclosure of "administrative staff manuals and instructions to staff *that affect a member of the public*" (emphasis added)).  CREW cannot impute this purported Congressional purpose to final opinions or unpublished statements of policy, given that those provisions do not contain such statutory language.  *Id.* §§ 552(a)(2)(A), (B).  Moreover, another passage from the House Report makes clear that Congress's primary concern in § 552(a)(2) was with the adjudication of private rights:

> Subsection (b) [referring to § 552(a)(2)] would help bring order out of the confusion of agency orders, opinions, policy statements, interpretations, manuals, and instructions by requiring each agency to maintain for public inspection an index of all the documents having precedential significance which would be made available or published under the law. The indexing requirement will *prevent a citizen from losing a controversy with an agency* because of some obscure or hidden order or opinion which the agency knows about but which has been unavailable to the citizen simply because he had no way to discover it.

H.R. Rep. 89-1497 at 29 (emphasis added).

Finally, CREW argues that OLC's lack of policymaking authority is irrelevant, because "regardless of how OLC opinions are adopted or incorporated into agency policies and practices, the opinions stand as final agency opinions of OLC and the attorney general[.]"  CREW's Br. at 32-33.  But this position was soundly rejected in the D.C. Circuit's recent *EFF* decision.  *See*

2014 WL 25916, at *7 (concluding that an OLC opinion "do[es] not authoritatively state or determine the agency's policy.").[13]  Furthermore, this argument lacks any limiting principle— any inter-agency government decision could be re-defined as including multiple "final opinions," one from each participating agency.  Thus, CREW's argument would effectively destroy the inter-agency deliberative process through which agencies provide confidential advice and comments to other agencies.  *See Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 188 (1975) (recognizing that FOIA was not intended to eliminate the inter-agency deliberative process).[14]

In sum, OLC opinions do not adjudicate private rights, and are quintessential privileged advice documents that do not decide any government policy.  Thus, OLC opinions do not qualify as "final opinions . . . made in the adjudication of cases" or unpublished "statements of policy and interpretations which have been adopted by the agency[.]"  5 U.S.C. § 552(a)(2)(A), (B).

---

[13] The D.C. Circuit's decision in *Vietnam Veterans of America v. Department of Navy*, 876 F.2d 164 (D.C. Cir. 1989), also makes this point.  *See* Gov't's Br. at 26.  CREW attempts to distinguish this case on the basis that "the court in that case found legal opinions of the Judge Advocates General sent to service officers upon request were not subject to disclosure because they did not contain 'statements of policy or interpretations adopted' by either the Army or Navy."  CREW's Br. at 32 n.13.  CREW's summary is absolutely correct:  because the Judge Advocate Generals did not have policy-making authority (but only the authority to dispense legal advice), the Judge Advocate Generals' legal opinions were not "statements of policy or interpretations" adopted by the Army or Navy.  The same is true of OLC here, which provides legal advice to client agencies, but it is those client agencies that retain ultimate policymaking authority.

[14] CREW relies on *Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997), for the proposition that "legal conclusions, even ones 'not formally binding,' must be disclosed even if the offices receiving those legal conclusions do not necessarily act to carry out the conclusions themselves."  CREW's Br. at 33.  But again, that case involved the adjudication of private rights by an agency with policy-making authority.  *See Tax Analysts*, 117 F.3d at 618 (noting that the "documents reflect the law the government is actually applying in its dealings with the taxpaying public"); *see also EFF*, 2014 WL 25916, at *6-7 (distinguishing *Tax Analysts* because "OLC did not have the authority to establish the 'working law' of the FBI" and "OLC therefore did not 'explain and apply established policy'").

### 3.   OLC Opinions Are Generally Privileged, And Therefore Need Not Be Disclosed As An Entire Category.

Although CREW now asserts that it is not seeking the disclosure of *all* OLC opinions, it is clear that CREW maintains that OLC must disclose a significant portion of its opinions. *See* Section IV.A, *supra*. In this respect, OLC's policy—of individualized decisionmaking, rather than automatically publishing an entire category of "binding" opinions—would be justified if a substantial portion of "binding" opinions may be properly withheld as privileged.

Here, OLC's policy is plainly rational, given that numerous courts have permitted OLC to withhold opinions that under CREW's definition would qualify as "binding." Again, the most prominent example is the D.C. Circuit's *EFF* decision, which not only rejected the applicability of the "working law" line of cases, but also expressly held that the OLC opinion was protected by the deliberative process privilege in its entirety. Specifically, the court held that the OLC opinion was "advice offered by OLC for consideration by officials of the FBI," and fell within the line of decisions "holding that the deliberative process privilege *does* cover legal memoranda that concern the *advisability* of a particular policy, but do not authoritatively state or determine the agency's policy." *EFF*, 2014 WL 25916, at *7.[15] With this precedent in mind, it is clear that a substantial portion (if not all) of OLC's "binding" opinions (as CREW uses that term) may be

---

[15] Numerous district court decisions have also permitted the withholding of OLC opinions that would appear to qualify as "binding" under CREW's understanding of that word. *See, e.g.*, *Nat'l Sec. Counselors v. CIA*, --- F. Supp. 2d ---, Case No. 11-443, 2013 WL 4111616 (D.D.C. Aug. 15, 2013); *New York Times Co. v. Dep't of Justice*, Case No. 12-cv-3215, 2013 WL 174222 (S.D.N.Y. Jan. 7, 2013); *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 584 F. Supp. 2d 65, 77 (D.D.C. 2008); *CREW v. Office of Admin.*, 249 F.R.D. 1, 6 (D.D.C. 2008); *New York Times Co. v. Dep't of Def.*, 499 F. Supp. 2d 501, 516 (S.D.N.Y. 2007); *Southam News v. INS*, 674 F. Supp. 881, 886 (D.D.C. 1987); *Morrison v. Dep't of Justice*, Case No. 87-3394, 1988 WL 47662 (D.D.C. Apr. 29, 1988). An agency's policy that conforms to the weight of judicial authority on an issue should not be overturned as arbitrary and capricious. *See* Gov't's Br. at 27.

properly withheld as privileged.   Accordingly, OLC's individualized publication policy is eminently rational.[16]

Setting aside CREW's arguments that are now foreclosed by *EFF*, CREW also responds by contending that privilege questions are fact-dependent, and therefore cannot support the government's motion to dismiss.   *See* CREW's Br. at 34-35.   Even if the application of privileges to particular documents are fact-dependent questions, however, there is no need for the Court to actually resolve any privilege questions or make any factual determinations here.[17] Instead, it is sufficient for the Court to note that numerous courts have permitted "binding" OLC opinions to be withheld as privileged.   That caselaw, by itself, is sufficient to uphold as rational OLC's individualized publication decisionmaking process.

On the merits of two relevant privileges—attorney-client and deliberative process— CREW offers scant reason to doubt those privileges' applicability.   First, on attorney-client, CREW questions whether "OLC has an attorney-client relationship with all the agencies in all the situations in which they seek OLC's advice."   CREW's Br. at 35.   But it cannot be seriously questioned that OLC's role—effectively functioning as agencies' outside counsel, *see* 28 C.F.R. § 0.25—is sufficient to invoke attorney-client protections.   *Cf. Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980) (noting that the attorney-client relationship applies when "the Government is dealing with its attorneys as would any private party seeking advice to

---

[16] Collateral estoppel is indeed relevant to this issue, because it precludes CREW from arguing that *no* "binding" OLC opinions are properly withheld as privileged.   *See CREW v. Office of Admin.*, 249 F.R.D. 1, 6 (D.D.C. 2008) (holding that an opinion "formally memorializing" OLC's advice was properly withheld as privileged).

[17] Questions about the application of privileges might be properly before the court in a FOIA suit challenging the withholding of a particular OLC opinion.   Even assuming *arguendo* that CREW's APA challenge is cognizable, however, the facts that under CREW's theory would make any particular OLC opinion privileged (or not) are irrelevant to whether OLC's overall practice of individualized, case-by-case determinations is arbitrary and capricious.

protect personal interests").[18]   Furthermore, OLC's unique role of providing definitive legal advice within the Executive Branch does not justify applying a narrower version of the attorney-client privilege to OLC.  *See* Gov't Br. at 33-38.

With respect to the deliberative process privilege, CREW's arguments generally boil down to the "secret law" line of cases.  *See* CREW's Br. at 36-41.  Those cases are inapplicable, however, for the reasons already discussed above, *see* Section IV.B.2, and as confirmed by the *EFF* decision.  *See also* Gov't Br. at 31-32.

In short, then, OLC's overall publication policies are entirely rational.  Prior judicial decisions—including the binding *EFF* decision—confirm that OLC opinions do not fall within § 552(a)(2), and also are generally exempt from disclosure as privileged.  Thus, OLC may properly implement an individualized, case-by-case decisionmaking process, rather than automatically disclosing whole categories of OLC opinions, which would effectively force OLC to indiscriminately waive privileges that have been consistently recognized in this Circuit.

### C.   Granting CREW's Requested Relief Would Undermine OLC's Important Role in the Executive Branch, and Raise Significant Constitutional Concerns.

CREW's requested relief—the disclosure of all (or nearly all) "binding" OLC opinions—is extremely broad, and would presumably require the disclosure of OLC's formal opinions, informal opinions that serve as precedents, and legal advice that represents OLC's considered views on an issue.  *See* Section IV.A, *supra*.  This relief should not be granted, because doing so would undermine OLC's important role of providing advice to assist the Executive Branch in the discharge of its constitutional responsibilities.

---

[18]  Moreover, even CREW's formulation—questioning whether OLC has an attorney-client relationship "with *all* the agencies in *all* the situations in which they seek OLC's advice," CREW's Br. at 35 (emphasis added)—appears to concede that OLC often has such an attorney-client relationship, which would be sufficient to establish the rationality of OLC's individualized publication decisionmaking process.

First, as CREW itself acknowledges, OLC serves an important function in the Executive Branch by providing legal advice representing "the interests of the United States, not merely those of an individual agency."  CREW's Br. at 35.  In doing so, OLC seeks to ensure its legal opinions "are as objective and accurate as possible, not swayed by the more parochial concerns animating the traditional attorney-client relationship."  *Id.* at 35-36.  Granting CREW's requested relief here, however, would undermine these important rule-of-law interests by discouraging agencies from seeking OLC's legal advice and potentially inhibiting OLC's ability to provide full and frank advice.  *See* Gov't's Br. at 33-35.

Indeed, the logic underlying CREW's claim is so expansive that it would call into question the Executive Branch's ability to obtain *any* confidential legal advice.  *See id.* at 33 n.15, 35-38.  Such a result would raise significant constitutional concerns, interfering with both the President's ability to receive confidential advice, and also his constitutional duty to take care that the laws be faithfully executed by Executive Branch agencies.  *Id.* at 35-38.

CREW's opposition entirely ignores the potentially devastating effect that its requested relief could have on OLC itself, and then trivializes the Article II constitutional concerns discussed above.  Specifically, CREW asserts that the constitutional concerns "rest[] on the same false premise that through this lawsuit CREW seeks to compel the disclosure of 'all OLC opinions.'"  CREW's Br. at 41.  But even when narrowed to CREW's current formulation of its requested relief—the disclosure of all (or nearly all) "binding" OLC opinions—the relief is still so expansive that it would interfere with the President's execution of his Article II duties.[19]

---

[19] CREW responds that it "does not dispute the constitutional authority of the president to obtain confidential and candid legal advice[.]"  CREW's Br. at 41.  CREW offers no explanation, however, for how that statement can be reconciled with its underlying theory in this lawsuit— that authoritative legal advice provided within the Executive Branch must be affirmatively published under FOIA.

In short, CREW displays a remarkable lack of concern about the far-reaching implications of its lawsuit. CREW characterizes the government's constitutional concerns as merely a "familiar refrain," CREW's Br. at 41, but in fact (to carry the metaphor even further) this lawsuit threatens to become a requiem—both for OLC, and the ability of the President and the rest of the Executive Branch to receive confidential legal advice. These concerns, by themselves, warrant rejection of CREW's claim.

## V.       ANY DISCUSSION OF DISCOVERY IS INAPPROPRIATE.

CREW's opposition repeatedly requests an opportunity to conduct discovery. But any discussion of discovery is entirely inappropriate for two reasons. First and foremost, CREW's Complaint fails as a matter of law: CREW lacks standing; CREW's APA claim is not cognizable for multiple reasons; and in any event CREW's underlying legal claim is meritless. Thus, dismissal is the appropriate result. CREW cannot rely on the prospect of discovery to overcome its antecedent failure to file a Complaint that properly states a claim for relief.

Second, even if the Court were to reach the merits, nothing in the government's motion prevents the Court from resolving this issue under the framework of Rule 12(b)(6). CREW acknowledges that the Court can consider "documents attached to or incorporated in the complaint, as well as matters of public record and those of which the court may take judicial notice," CREW's Br. at 8, and here the government's motion does not rely on any sources falling outside those categories.

For example, CREW challenges the government's reliance on certain documents, such as OLC's Best Practices Memo. *See* CREW's Br. at 20-21. But that document was expressly incorporated into CREW's own Complaint, and is also available on OLC's website as an official agency document. To the extent that CREW contends that the documents relied upon by the government contradict allegations in the Complaint, the Court must accept the actual documents.

*See* Wright & Miller, *Federal Practice and Procedure* § 1363 (3d ed. 2013) ("The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading.").[20]

Finally, CREW asserts that the government's motion relies on various "factual assertions" that preclude a Rule 12 dismissal.  But those assertions are primarily legal, rather than factual.  *See, e.g.*, CREW's Br. at 20 (listing disputed factual assertions as including issues about OLC's legal authority and the privileged status of OLC's opinions).  Because courts do not defer to legal conclusions contained in the Complaint, *see* Gov't Br. at 7 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the government's motion is still properly considered under Rule 12.[21]

In any event, for all of the reasons discussed above, *see* Sections I-IV, CREW's claim fails as a matter of law.  Any discussion of discovery is therefore entirely inappropriate.

## CONCLUSION

CREW's Complaint should be dismissed for lack of subject-matter jurisdiction, or in the alternative for failure to state a claim upon which relief can be granted.

Dated: January 30, 2014

Respectfully Submitted,

STUART F. DELERY
Assistant Attorney General

RONALD C. MACHEN JR.
United States Attorney

---

[20] As for the declaration referred to in the government's motion to dismiss, *see* CREW's Br. at 20 n.6, the government was simply quoting a decision from the Second Circuit (which in turn quoted a declaration filed in that case) for the proposition that OLC did not actually make the policy decision in that case.  *See* Gov't Br. at 25 (quoting *Brennan Ctr. for Justice v. Dep't of Justice*, 697 F.3d 184, 188, 190 (2d Cir. 2012)).  In any event, OLC's lack of policymaking authority is confirmed by the *EFF* decision.  *See* 2014 WL 25916, at *7-8.

[21] Furthermore, even under CREW's framework—in which the government's motion should be considered a motion for summary judgment—CREW still would not be entitled to discovery, because CREW has not filed a motion (or carried its burden) under Rule 56(d) of the Federal Rules of Civil Procedure (formerly Rule 56(f)).  *See Banks v. Veneman*, 402 F. Supp. 2d 43, 47 (D.D.C. 2005); *see also Moses v. Dodaro*, 774 F. Supp. 2d 206, 215 (D.D.C. 2011).

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/   Daniel Schwei
DANIEL SCHWEI
Trial Attorney (N.Y. Bar)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC 20530
Tel.:       (202) 305-8693
Fax:       (202) 616-8470
Email:    daniel.s.schwei@usdoj.gov

Mailing Address:
Post Office Box 883
Washington, D.C. 20044

Courier Address:
20 Massachusetts Avenue N.W.
Washington, D.C. 20001

*Counsel for Defendants*